# Delaware, Lackawanna & Western Railroad Company's Tax Assessment (No. 1).

*Taxation—Assessments—Uniformity—Coal lands.*

1. In order to conform to the constitutional principle of uniformity in taxation, the courts will, in determining the valuation of coal lands, take into consideration the fact that the assessed value of real estate in the district in which the coal lands are situated is below its actual value, and will assess such lands according to the ratio of the actual to the assessed value of other lands in the district; but in determining what the proper ratio is, the court cannot include personal property so as to increase the percentage of ratio to the disadvantage of the owners of coal lands.

*Taxation—Assessments—Appeals—Act of April 19, 1889, P. L. 37.*

2. On appeal from the board of revision to the court of common pleas under the act of 1889, the proceeding as to proofs and pleadings is de novo and the courts must hear and determine the questions in dispute under their general equity powers in the same manner as if the controversy were between private litigants.

Argued Feb. 23, 1909.  Appeal, No. 370, Jan. T., 1908, by The Delaware, Lackawanna & Western Railroad Company, from order of C. P. Lackawanna Co., Nov. T., 1907, No. 513, on appeal from tax assessment in the Matter of the Assessment of Land of The Delaware, Lackawanna & Western Railroad Company in the Sixth Ward of the Borough of Taylor.  Before FELL, BROWN, POTTER, ELKIN and STEWART, JJ.  Reversed.

Appeal from the decision of the county commissioners of Lackawanna county.

This appeal was tried with several others under the following agreement:

For the purpose only of these appeals, appellants waive the claim that every coal property should be separately assessed at its individual value and consent that the court may adopt for the purpose of fixing the value of coal lands a uniform average rate per foot acre of all coal which can be mined at a profit. The quantities of such minable coal to be fixed either by agree-

ment of the parties or their engineers, or, so far as such agreement cannot be reached, to be ascertained by the court upon evidence. Evidence to be received applicable to all appeals so far as relevant upon the ratio of actual to assessed value of other real estate in the county and its several municipal divisions in which the coal lands are situated.

It is understood by this agreement that no right of appellants to appeal from the values fixed by the court, excepting as expressly waived in the agreement, shall be construed to be waived.

The court after hearing fixed the assessment at $150 per acre as actual value from which forty per cent was to be deducted so as to make the assessment uniform with that of other real estate in the county.

On motion for rehearing the court filed the following opinion:

In our order of July 13, 1908, the majority of the court fixed the sum of $60.00 as the assessment rate per foot acre of coal in the county. Since handing down the order our attention has been called to what is termed by appellants' counsel as "clear error." We stated in the order that the average ratio to actual value of surface assessments is forty per cent. We based this conclusion on a tabulation of surface assessments submitted to us by respondents. It appears now that this tabulation included personal property. In a strict and technical sense, the criticism of appellants' counsel is justified. The correct tabulation would reduce the ratio of surface assessments to about thirty-five per cent of the actual value, and we are asked now to change the assessment ratio per foot acre accordingly. We decline to do this, because we are not disposed to treat the question along mathematical lines. The problem submitted to us should be considered on broader grounds. We, therefore, reaffirm the order of July 13, 1908, fixing the assessment on coal per foot acre through the county at $60.00.

*Error assigned* was the order of the court.

*Everett Warren,* of *Willard, Warren & Knapp,* with him *D. R. Reese,* for appellant.—Coal lands are assessable as real estate; they are land, in other words. And it is submitted that the court below was bound to fix the rate so that it would bear the same proportion to the figure which it determined represented the assessable value under the law of coal lands that was found to have been adopted by the commissioners in fixing the assessable figure for the other real estate in the county: Rockhill Iron & Coal Co. v. Fulton County, 204 Pa. 47; Pringle's App., 6 Luzerne Leg. Reg. Reps. 525; Richter's App., 8 Pa. C. C. Rep. 119; Cambridge Spring Co.'s App., 21 Pa. C. C. Rep. 669; Harrison's App., 17 Pa. Dist. Rep. 15; Mattern v. Huntingdon County Commissioners, 17 Pa. Dist. Rep. 15.

*John P. Kelly,* of *O'Brien & Kelly,* with him *John J. Toohey,* county solicitor, and *Clarence Balentine,* for appellees.

OPINION BY MR. JUSTICE ELKIN, March 29, 1909:

Controversies growing out of the assessment and collection of taxes are as old as civilization. To question the assessment, to doubt the levy and to delay the collector may be classed among those inalienable rights of mankind not guaranteed by any constitution but very generally asserted under the law of human nature. From time immemorial the people have resisted all attempts to increase the burdens of taxation and have yielded only when convinced of the governmental necessity demanding such increase. Each person, natural or artificial, must bear his share of the public burdens, and the burden of each is measured by the ratio ascertained by dividing the total amount of taxes necessary to meet the public burdens in a given district by the whole valuation of property within the territorial limits of that district, and when the ratio is thus fixed, the amount of tax to be paid by each individual property owner is determined by multiplying the assessed value of his property by this ratio. This rule has resulted from the demands made by the people upon legislative bodies for equality of taxation. The large property owner and the small holder pay upon the same ratio, and when the valuation

has been ascertained and fixed upon a fair basis, which means that the valuation should be based as nearly as practicable upon market value, and if not on market value, then upon the relative value of each property to market value, there results what is known in organic and statute law as uniformity, which is the desideratum to be attained in any just system of taxation. While every tax is a burden, it is more cheerfully borne when the citizen feels that he is only required to bear his proportionate share of that burden measured by the value of his property to that of his neighbor. This is not an idle thought in the mind of the taxpayer, nor is it a mere speculative theory advocated by learned writers on the subject, but it is a fundamental principle written into the constitutions and statutes of almost every state in this country. In Pennsylvania the framers of the new constitution embodied this principle in our organic law in terms so plain that no one should misunderstand its meaning or doubt its application, and the people by the adoption of that instrument placed the seal of their approval upon a system of taxation which has for its corner stone uniformity in the valuation, levy and collection of all taxes. Section one of article nine provides that, "All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." There is, perhaps, no other section of the constitution upon which the courts above and below have been so frequently required to pass in the administration of their duties. The central thought running through all the opinions is that the principle of uniformity is a constitutional mandate to the courts, to the legislature, and to the taxing authorities, in the levy and assessment of taxes which cannot be disregarded. The purpose of requiring all tax laws to be uniform is to produce equality of taxation. Absolute equality is difficult of attainment, and approximate equality is all that can reasonably be expected. Hence it has been held that where there is substantial uniformity the constitutional requirement has been met: Kelly v. Pittsburg, 85 Pa. 170; Fox's Appeal, 112 Pa. 337; Commonwealth v. Canal Company, 123 Pa. 594. But all these cases hold there

must be substantial uniformity which means as nearly uniform as practicable in view of the instrumentalities with which and subjects upon which tax laws operate. It is the duty of the courts in dealing with this subject to enforce as nearly as may be equality of burden and uniformity of method in determining what share of the burden each taxable subject must bear. With this thought for our guide, we must now inquire as to the facts and the situation of the parties in the case at bar under the law and the pleadings. The right of appeal from the decision of the county commissioners, or board of revision, to the court of common pleas is given by the Act of April 19, 1889, P. L. 37. When an owner of real estate or other taxable property has taken an appeal as authorized by the act it is the duty of the court to proceed to hear and determine the questions raised and make such order or decree touching the same as may seem just and equitable, "having due regard to the valuation and assessment made of other real estate in such county or city." It will be observed that the courts in dealing with this subject under the provisions of the statute act under their general equity powers with the single limitation that in arriving at a just conclusion "due regard to the valuation and assessment made of other real estate" must be given. This is the legislative expression of the principle that all taxes shall be uniform upon the same class of subjects, and is a direction to the courts when hearing such cases that the valuation and assessment of the same class of taxable subjects belonging to other owners in the same district must be considered. In other words, the valuation of the property of one owner is so closely related to the valuation of the property of all other owners in the same district that the court must be advised as to the general valuation of other properties in order to determine what is a just and uniform valuation of the property in question. Each taxpayer, no matter how great or small, has a right to demand that his property shall be assessed upon the basis of a uniform valuation of other properties belonging to the same class and within the territorial limits of the authority levying the tax, and it is the duty of all the authorities dealing with this subject to

administer the law in a spirit to produce as nearly as may be uniformity of result. Coal lands are the taxable subjects dealt with in this proceeding. They are real estate, and for purposes of taxation must be treated as belonging to the same class of subjects as other real estate located within the same district and being subject to the same tax authorities. It is apparent, therefore, that in determining what the assessed value of the coal lands of appellant should be due regard must be had for the valuation of all other real estate in the same district. It is true that the act of 1889 does not prescribe any method of procedure to guide the courts in such cases, but in the absence of any statutory requirement, we can see no reason why the parties should not proceed, and the courts hear and determine the questions involved, in the same manner as other controversies are heard and determined between private litigants. When the appeal is perfected in the court of common pleas the whole proceeding is de novo and the facts must be found and the law applied as in any other case. The parties appear by counsel and the court sitting as a chancellor hears and determines upon the proofs offered, or it may be that the parties through their counsel may agree with the consent of the court as to the facts, or as to the method of procedure by which the necessary facts may be ascertained. This is what was done in the present proceeding. In order to arrive at a uniform valuation of the coal lands of appellant for purposes of taxation, and in view of the almost endless amount of detail required if each tract should be treated separately, at the suggestion of the court, counsel submitted a method of arriving at a proper valuation of the lands in question, and the hearing then proceeded along the lines agreed upon in order to determine the assessable value. The court, the counsel, and the parties assumed as a fact, and it is a fact, that the assessed value of real estate in the district is far below its actual value. It was also assumed, and properly so, that in order to make the valuation of appellant's property uniform with the valuation of other real estate it would be necessary that the ratio of actual to assessed value should be the same upon all real estate, including coal lands, within any

district whose authorities were attempting to levy the tax. Evidence was then introduced to show the ratio of actual to assessed value of other real estate, and this for the purpose of enabling the court to find as a fact what that ratio was so that when the actual value of appellant's property should be determined the ratio thus found could be applied. The parties through their counsel and with the approval of the court proceeded along these lines to offer proofs and try their case.

After the hearing the court took the papers and in due time found as facts, the actual value of the coal lands returned for assessment, and the ratio of actual to assessed value, and then determined the amount of the assessment upon this basis. We think it was clearly within the rights of the parties and the powers of the court to so hear and determine the controversy. It happened, however, in determining what the proper ratio was, the court included personal property which did not belong to the same class of subjects, and this made considerable difference in the percentage of ratio to the disadvantage of appellant. The court was then asked to correct the error by fixing the proper ratio, which it refused to do, because while conceding the error on the whole record it was thought the evidence was sufficient to sustain the valuation originally fixed. In this we think there was error. We agree that the desired result to be obtained was a uniform valuation of coal lands and that it was within the power of the court to receive all proofs bearing on this question and to determine the same upon a just basis having due regard for the valuation of other real estate in the district. The court and the parties were not required to adopt any particular method of determining the assessable value, but when a particular method was adopted, and that method a fair one, it was binding upon the parties and the court should have so regarded it. To hear the case on one theory and after all the proofs are in to decide it upon another would be to disregard orderly methods of procedure and might do violence to the rights of parties. When the parties at the suggestion and with the approval of the court agreed upon a method of procedure to determine the question involved, it should have been followed   The method

adopted was reasonable and fair and there is no sufficient reason why it should have been disregarded after the hearing. Under the authority of Rockhill Iron & Coal Co. v. Fulton County, 204 Pa. 44, the learned counsel for appellees request this court to review the whole record and determine a proper valuation of the coal lands for purposes of assessment. It is true we have this power, but in the exercise of it, the pleadings and the course of procedure in the court below should be our guide, and unless manifestly wrong under the law, would be followed here. The court below acted clearly within its authority in every step taken and only erred because it failed to apply the rule adopted at the hearing for the determination of the assessable value. There is no error in any other respect so far as disclosed by the record. The learned counsel for appellees have also invoked the act of 1842 in aid of their contention that the valuation fixed by the court in the present case should be sustained. This act indicates that the board of revision shall inquire whether all property returned for taxation has been valued at a sum or price not less than the same would bring after notice at public sale. There can be no doubt of the legislative intention which finds expression in the act of 1842 and the earlier statutes, that actual selling value shall be the standard to determine assessable value, and if the question could be squarely raised as to the proper value to be placed upon real estate in any district, or in all districts, the courts would necessarily hold that actual selling value was the proper standard for fixing assessable value. However, the constitution and the act of 1889 have emphasized the principle of uniformity as more important than the standard of valuation. The assessed valuation should as nearly as possible represent the actual value, but it must be uniform no matter whether the proper standard is followed or not. It is a well-known fact that from the beginning of our state government to the present time in nearly every section of the commonwealth the assessed value of property is ridiculously low as compared with actual value. No doubt the framers of the constitution had this thought in mind when they wrote into the fundamental law that all taxes must be uniform on

the same class of subjects. It will not do to assess farm lands at one-fifth their actual value, dwelling houses at one-third, manufacturing establishments at one-half, and coal lands at full value. The constitution says the valuation must be uniform on the same class of taxable subjects and real estate is a taxable subject of a particular class, and coal lands are real estate, hence the rule of uniformity must be applied to all kinds of real estate as a class.

Decree reversed and record remitted to the court below with instructions to determine the proper ratio without including personal property and when the ratio is so determined then to fix the proper valuation of the coal lands in question upon this basis, costs on the appeal to this court to be paid by appellees.