McKnight Shopping Center, Inc., Appellant, *v.*
Board of Property Assessment.

Argued October 9, 1964. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

236

*T. Robert Brennan,* with him *Brennan and Brennan,* for appellant.

*John F. Murphy,* Assistant County Solicitor, with him *Francis A. Barry,* First Assistant County Solicitor, and *Maurice Louik,* County Solicitor, for appellee.

OPINION BY MR. JUSTICE COHEN, February 25, 1965:

McKnight Shopping Center, Inc. (appellant) was the owner of a parcel of real estate located in Allegheny County on January 1, 1959, the beginning date of the triennial assessment period 1959-1960-1961. On or about January 23, 1959, it received notice from the Board of Property Assessment, Appeals and Review of the County (Board) that the assessed value of its land had been increased for the triennial period from $50,-450 to $240,700.[1] This increase in the assessed value of the land resulted in the total assessment of the property[2] being increased from $296,720 to $486,970.

———
[1] The property was actually assessed in two pieces because it straddled a township line. This is irrelevant here, and we have stated the combined assessment.

[2] The "property" consisted of a shopping center complex; and although the notices sent by the Board revealed only that an increase in land assessments had been made and counsel for the Board made reference below to the absence of controversy over the buildings, it is clear that the total assessment is in question and that *only* the total assessment can be questioned. The proper assessment procedure is to value the property as a whole, even

Appellant appealed to the Board, alleging that the total assessment was in excess of the market value of its property and that the ratio of assessed value to market value was not uniform with that existing for other properties in the county. The Board refused appellant's appeal, and appellant then appealed to the court below.

In the proceedings below the Board introduced a certified copy of the assessments on appellant's property. This established a prima facie case for the validity of the assessment. *Lehigh Valley Coal Company v. Northumberland County Commissioners*, 250 Pa. 515, 95 Atl. 712 (1915). Appellant presented the testimony of three witnesses. One, its secretary, described the property and its use and stated that appellant had been asking $550,000 for the property. He also stated that in May, 1960, appellant entered into a lease for the property providing for a return of income and an option to buy based upon a $550,000 value.

Appellant's second witness, a real estate broker, confirmed the prior witness' testimony regarding the lease. Its third witness, also a real estate broker, testified that he had made an appraisal of the property as of January 1, 1959, and determined that its fair market value was $550,000. He pointed out that the assessed value of $486,970 thus represented 88.5% of the market value. This witness then indicated that there were two other shopping centers in the area which he considered comparable to appellant's property. He stated his opinion of the fair market value of each comparable property and pointed out that the ratios of their assessed values to their market values were 57% and 76%.

---

where separate values for land and building by statute are required to be stated: *North Park Village, Inc. v. Board of Property Assessments, Appeals and Review*, 408 Pa. 433, 184 A. 2d 253 (1962) and *Sheldon Hotel Corporation Assessment Appeal*, 362 Pa. 313, 66 A. 2d 242 (1949).

With this, appellant rested. The Board presented no testimony and also rested. The court below dismissed appellant's appeals, pointing out (1) that appellant's own testimony indicated that the assessed value of its property was not in excess of the market value and (2) that appellant's testimony regarding lack of uniformity was not competent. Although it did not expressly so state with regard to this latter point, it is clear that the court rejected the testimony of appellant's third witness on the theory that it could not be considered credible. The basis for this theory was his testimony that one of the comparable shopping centers—about one-third in acreage size and about one-half in square footage—was worth $445,000—about 80% of the value of appellant's property. This, the court below indicated, it could not believe. The court also put aside the testimony regarding the other shopping center on the ground that appellant's counsel had admitted it was not comparable.

Appellant appealed to this Court. It, properly, raises only the issue of uniformity since, as pointed out, its own testimony established a market value in excess of the assessed value.

Real estate in Allegheny County is to be assessed at its actual value. Act of May 22, 1933, P. L. 853, §402, as amended, 72 P.S. §5020-402. *North Park Village, Inc. v. Board of Property Assessments, Appeals and Review,* 408 Pa. 433, 184 A. 2d 253 (1962). Actual value means market value. Thus, we start with the assumption that all real estate in the county is assessed at 100% of its market value,[3] an assumption which was confirmed orally at argument by the Board's

---

[3] "The states in which the appeals process is ineffective are those in which the 100% assessment statute is respected by the courts and administrative appeal bodies, but *not* by the assessors." The Property Tax, Dean A. M. Woodruff, The George Washington University.

counsel and is not contradicted by any testimony here. We have pointed out, however, regardless of the purported percentage generally used by the taxing authority, that where a taxpayer shows that other properties in the taxing district are assessed at less than the generally applied ratio of assessed to market value, he is entitled to have his assessment reduced to reflect the same ratio of assessed to market values as actually applies to the other properties. *Brooks Building Tax Assessment Case,* 391 Pa. 94, 137 A. 2d 273 (1958). In that case the taxpayer showed that his property was assessed at 91.9% of its market value while three other similar properties in the city were assessed at 40.2% to 57.2% of their market values.

In the present case appellant produced uncontradicted testimony that its property was assessed at 88.5% of its market value while two other shopping centers were assessed at 57% and 76% of their market values. The rejection of this testimony by the court below was improper. First, as pointed out by appellant, the court's reliance on the size factor in rejecting the testimony regarding the value of the smaller shopping center failed to recognize that many factors, of which size is but one, go into the determination of market value. "In determining market value many factors may be relevant . . . all the elements considered must be directed to determining the value of the property in the market, a determination which is not controlled by any single factor and which is ultimately made on the basis of competent testimony as to what the property is worth in the market at a fair sale. . . ." *Park Drive Manor, Inc., Tax Assessment Case,* 380 Pa. 134, 136, 110 A. 2d 394 (1955). Thus, it is quite possible that a shopping center property with one-third the acreage and one-half the square footage of another may be worth 80% of the value of the latter.

While we do not view the testimony of appellant's witness as completely satisfactory in explaining fully the factors applicable here, this testimony cannot be disregarded unless the lower court in the exercise of its discretion finds it incredible. No such finding is justified here for the reason given.

Second, with regard to the larger shopping center, the court below ignored the testimony in the belief that appellant's counsel had admitted its lack of comparability. However, counsel, before us, points out that in considering lack of uniformity, the difference in the properties is not material in light of their different ratios of assessed to market value. With this, we agree.

Our Constitution, Art. IX, §1, requires all taxes to be uniform on the same class of subjects within the territorial limits of the authority levying the tax.[4] In applying this provision of our Constitution to the taxation of real estate, it is clear that *all* real estate is the class entitled to uniform treatment and that the ratio of assessed value to market value adopted by the taxing authority—be it 20%, 60% or 100%—must be applied equally and uniformly to all real estate within the jurisdiction of such authority. This does not mean that different factors may not be employed in arriving at market values for one type of real estate when contrasted with another type of real estate. Certainly, the factors which affect the market value of a parcel of commercial property may differ from those which affect the market value of a residence. However, once the relevant factors are applied and market values are

---

[4] Absent the uniformity clause in our State Constitution, the 14th Amendment of the Federal Constitution would protect taxpayers of the same class from discriminatory treatment in violation of their right to equal protection of the laws. *Township of Hillsborough v. Cromwell*, 326 U.S. 620 (1946). See *Shoppers' World Inc. v. Framingham*, Mass. , (1965).

determined, the ratio of the assessed values to these market values must be uniform throughout the taxing district. See *Hammermill Paper Co. v. City of Erie,* 372 Pa. 85, 92 A. 2d 422 (1952). Thus, in determining uniformity the ratios of assessed values to market values of all properties are all relevant and, hence, in that sense all properties are "comparables."[5] *Delaware, Lackawanna & Western Railroad Company's Tax Assessment (No. 1),* 224 Pa. 240, 73 Atl. 429 (1909).

This is different from the meaning of "comparables" in determining the market value of a specific property. In this context, as one of the factors to be considered in determining market value, "comparables" means properties of a similar nature which have been recently sold. In order to be comparable in this latter sense, however, the properties need not be identical: *Buhl Foundation v. Board of Property Assessment, Appeals and Review,* 407 Pa. 567, 180 A. 2d 900 (1962). In reviewing sales of other properties, "to compare" means to examine the characters or qualities of one or more properties for the purpose of discovering their resemblances or differences. The aim is to show relative values by bringing out characteristic qualities, whether similar or divergent. Thus, comparisons based on sales may be made according to location, age and condition of improvements, income and expense, use, size, type of construction and in numerous other ways.

In considering whether or not a particular assessment is lacking in uniformity, however, a property owner, the taxing authority and the courts may rely

---

[5] In presenting evidence on the constitutional issue of uniformity the parties should not be restricted in the quantity of evidence offered by a pre-determined number of permissible examples. The lower court must be permitted to exercise its discretion as to the quantity of evidence it will allow to be introduced but it does not do so by establishing a rigid pre-determined limitation.

on any relevant evidence. The procedure followed in the *Brooks Building* case, supra, illustrated one method of showing a lack of uniformity; but we do not consider it an exclusive one. It would be easily satisfactory to produce, if possible, evidence regarding the ratios of assessed values to market values as the latter are reflected in actual sales of any other real estate in the taxing district for a reasonable period prior to the assessment date. Thus, for example, if competent evidence of an overall current ratio based on sales within the taxing district is available, it may be introduced.

Whatever the procedure, the taxing authority always has the right to rebut the owner's evidence, and the weight to be given to all the evidence is always for the court to determine. The taxing authority cannot, however, do nothing except at the risk of having the owner's testimony accepted by the court. Where that testimony is relevant and credible, it is entitled to be given weight; and unless it is rebutted, it must necessarily be accepted. *Deitch Company v. Board of Property Assessment*, 417 Pa. 213, 209 A. 2d 397 (1965); *Kaemmerling's Appeal*, 282 Pa. 78, 127 Atl. 439 (1925) and *Kemble's Estate*, 280 Pa. 441, 124 Atl. 694 (1924).

One final point remains with respect to the present case. Appellant's valuation witness testified that, in evaluating the subject property, he considered the lease-option which was under negotiation but was not actually executed until the middle of the triennium. The lower court held that this was irrelevant to the question of value as of January 1, 1959. We believe the court went too far. The reasonably foreseeable prospects for the property during the subject triennium—its probable return on capital, its probable use and occupancy, its probable lease and/or sale, etc.—form a legitimate area of inquiry. Whatever factors are based upon a reasonable probability existing at the

time of the assessment, as opposed to pure speculation, are relevant on the question of value for the triennium. While not controlling, they are not irrelevant; and here the witness stated that he based his opinion on a number of factors, of which the lease-option negotiation was only one.

The orders of the court below are vacated and the case is remanded for further proceedings consistent with this opinion.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I would affirm the Order of the Court below for the reasons set forth at length in my dissenting opinions in *Morris v. Bd. of Property Assessment*, 417 Pa. 192, 209 A. 2d 407, and in *Deitch Company v. Bd. of Property Assessment*, 417 Pa. 213, 209 A. 2d 397.

Mr. Justice MUSMANNO joins in this Dissenting Opinion.