Madway, Appellant, *v.* Board for the Assessment and Revision of Taxes.

Argued January 16, 1967. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

Appeal No. 90:

Appeal No. 91:

*Marvin Comisky,* with him *Ruth B. Rosenberg, Morris Passon,* and *Blank, Rudenko, Klaus & Rome,* for appellants.

*John E. Forsythe,* Township Solicitor, with him *Donald W. Kramer, Michael F. Beausang, Jr., Herbert Bass,* and *MacCoy, Evans & Lewis,* and *Wright, Spencer, Manning & Sagendorph,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, September 26, 1967:

In this opinion we dispose of two appeals involving the same parties and closely related issues. Appeal No. 90 challenges the constitutionality of certain sections of the First Class Township Code, the Public School Code, and amendments thereto,[1] all of which govern the reassessment of real property to reflect increases in value resulting from new construction made during the tax year.

The taxpayers-appellants, Madway Engineers and Constructors, and Wynnewood House, Inc. own property situated at 1001-1021 City Line Avenue and 300 East Lancaster Avenue respectively. In 1963 appellants began to construct apartments on their properties. During the course of this construction, these properties were assessed three times: on January 1, 1964, April 1, 1964 and July 1, 1964. Each assessment reflected the increase in value caused by the progressing construction. All three assessments were protested by appellants on the ground that the 1963 amendments to the Public School and First Class Township Codes prohibit the interim assessment of residential construction until the property has been occupied or conveyed to a bona fide purchaser.[2] The Board for the Assess-

---

[1] First Class Township Code, Act of June 24, 1931, P. L. 1206, §1709.1, as amended by Act of August 24, 1963, P. L. 1212, §1, 53 P.S. §56709.1 (Supp. 1966) ; Public School Code, Act of March 10, 1949, P. L. 30, §677.1, as amended by Act of August 8, 1963, P. L. 583, §1, 24 P.S. §6-677.1 (Supp. 1966). It was assumed by the court below that the County Code, Act of August 9, 1955, P. L. 323, §1770.1, as amended by Act of August 14, 1963, P. L. 977, §2, 16 P.S. §1770.1 (Supp. 1966) is also involved in this litigation. Although the language of the County Code is practically identical with that of the other two codes, the County was not a party either below or on appeal. Hence, strictly speaking, the constitutionality of the County Code is not here involved.

[2] Because the two statutes in question are for all practical purposes identical, we shall quote only the relevant text of the

ment and Revision of Taxes of Montgomery County upheld the assessment of January 1, 1964 on the theory that it was actually an unfinished *annual* assessment and hence not governed by the *interim* assessment provisions of the Public School and First Class Township Codes. This ruling was affirmed by the Court of Common Pleas of Montgomery County and is now the subject of Appeal No. 91. As for the April and July assessments, the board struck them down on the authority of the 1963 amendments, supra note 2. On appeal to the court of common pleas however, the 1963 amendments were declared unconstitutional as violative of the Pennsylvania Constitution's uniformity clause.[3] As a result of these two decisions, all three assessments have been upheld below; hence the appeal by the taxpayers.

First Class Township Code (1963 amendment in italics) : "Whenever in any first class township there is any construction of a building or buildings after the township commissioners have prepared a duplicate of the assessment of township taxes and the building is not included in the tax duplicate of the township, the authority responsible for assessments in the township shall, upon the request of the township commissioners, direct the assessor in the township to inspect and reassess, subject to the right of appeal and adjustment provided by the act of Assembly under which assessments are made, all taxable property in the township to which major improvements have been made after the original duplicates were prepared and to give notice of such reassessments within ten days to the authority responsible for assessments, the township and the property owner: *Provided, That in the case of new construction of single and multiple dwellings for residential purposes, no increased valuation or assessment shall be made when new construction of single and multiple dwellings for residential purposes occurs until there has been a conveyance to a bona fide purchaser or the premises have been occupied whichever is the earlier to occur.*"

[3] "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax . . . ." Pa. Const., Art. IX, §1.

The April and July Assessments: Appeal No. 90

The basic interim assessment provisions of the First Class Township and Public School Codes provide that upon request of the taxing authority (School District or Township), the authority responsible for assessments shall direct the assessor to inspect and reassess property upon which improvements have been made after September 1 of any given year (September 1 being the date on which the annual assessments are made). These annual assessments are used to compute the tax due the following year. In 1963 however, both codes were amended to prohibit interim assessments for unconveyed or unoccupied residential structures. We agree with the court below that these amendments violate the Pennsylvania Constitution.

Whether the 1963 amendments be interpreted as a classification of real estate into such categories that one category, unoccupied or unconveyed residential property, is not subject to interim assessments, or whether they be treated as simply exempting such property from otherwise permissible interim assessments, the result is still the same: the amendments cannot stand. It is certainly too late in the day to argue that the 1963 amendments qualify as valid tax exemptions. Article IX, §2 of our constitution clearly states that all exemptions, other than those set forth in section 1, "shall be void." Since section 1 nowhere exempts residential property, occupied or not, the result is inescapable.

The appellants, however, argue strenuously that the 1963 amendments are not tax exemptions since the property can certainly be reassessed during the next *annual* assessment period and in any event, can be reassessed as soon as it is conveyed or occupied. We need not face this argument that only a *total* exemption from all taxation violates Article IX, §2, since

viewed as classification statutes, as appellants contend, the amendments still violate the uniformity clause.

Admittedly the uniformity clause of the Pennsylvania Constitution has followed a path through our courts that is easily as unpredictable and winding as Alice's road through Wonderland. No provision in our constitution has been so much litigated yet so little understood; and certainly not the least thorny question has been whether real estate as a whole constitutes a class which cannot be further broken down for tax purposes. To put to rest some of this confusion, we hold today that real estate as a subject for taxation may not validly be divided into different classes.

It is quite true, as appellants contend, that this Court's initial interpretation of the uniformity clause permitted division of real estate into different classes. In both *Kitty Roup's Case,* 81* Pa. 211 (1874) and *City of Williamsport v. Brown,* 84 Pa. 438 (1877) ordinances taxing rural and urban property at different rates were sustained. Accord, *Jermyn v. Scranton City,* 212 Pa. 598, 62 Atl. 29 (1905). But in 1909 these three cases were all implicitly overruled by Mr. Justice ELKIN, writing for the Court in *Delaware, Lackawanna & Western Railroad Co.'s Tax Assessment (No. 1),* 224 Pa. 240, 73 Atl. 429 (1909). An attempt to tax coal land at a higher assessment-to-market-value ratio than other property in the same district was unequivocally struck down on the authority of the uniformity clause.

Far from being merely the correction of a "mathematical error" as the appellants style the case in their brief, the *Delaware* decision is a clear enunciation of a constitutional mandate. The mathematical error so lightly dismissed by appellants actually caused the different taxing rates. The refusal of the lower court to correct this error prompted Justice ELKIN to state: "It will not do to assess farm lands at one-fifth their

actual value, dwelling houses at one-third, manufacturing establishments at one-half, and coal lands at full value. The constitution says the valuation must be uniform on the same class of taxable subjects and real estate is a taxable subject of a particular class, and coal lands are real estate, hence the rule of uniformity must be applied to all kinds of real estate as a class." 224 Pa. at 248, 73 Atl. at 432.

Not only has *Delaware* remained unchallenged since 1909, its holding has been buttressed three times by this Court in the last five years. One such instance is *Deitch Co. v. Board of Property Assessment*, 417 Pa. 213, 209 A. 2d 397 (1965), which involved the determination of the proper method to be used in computing an assessment. There the taxpayer's premise was that in a given taxing district the assessments will be somewhat less than the real market value and that in fact there will often exist a fairly consistent ratio of assessment to market value within the district. The issue on appeal involved how such a ratio could be shown by the taxpayer. The trial court held that the ratio could only be shown by reference to *comparable* property within the taxing district and that comparable meant "properties which are similar properties of the same nature in the neighborhood of the taxpayer's property." In reversing this decision on the ground that comparable property must mean *all* real property within a taxing district, we said: "the uniformity requirement of the Constitution of Pennsylvania has been construed to require that all real estate is a class which is entitled to uniform treatment." See *McKnight Shopping Center, Inc. v. Board of Property Assessment*, 417 Pa. 234, 209 A. 2d 389 (1965); *Buhl Foundation v. Board of Property Assessment*, 407 Pa. 567, 180 A. 2d 900 (1962). The attempt by appellants to distinguish these cases on the ground that they involve classification by the local boards of assessment rather than by

the Legislature is without merit.  Our constitution is equally binding on all lawmaking bodies within this Commonwealth.  The classifications in *Deitch, Buhl* or *McKnight* would have been no less violative of the uniformity clause had they come from Harrisburg.

Appellants rely most heavily on the *Jones & Laughlin Tax Assessment Case,* 405 Pa. 421, 175 A. 2d 856 (1961) to support their contention that real estate may be classified for tax purposes.  However, the classification involved in *Jones & Laughlin* was actually between real estate and machinery, not between taxable and nontaxable real estate.  The case involved the construction of a 1953 amendment to The Fourth to Eighth Class County Assessment Law which declared that certain kinds of machinery, tools and appliances were not to be included as part of the real estate for assessment purposes.  Mr. Justice EAGEN, writing for the Court, stated at several places in his opinion that the machinery and foundations involved in the appeal not only were not assessable, but were in fact not real estate at all.[4]  This conclusion was reached

---

[4] For example, in distinguishing between loading docks and certain towers which supported coke ovens, the Court said: "The loading docks cannot, under any extension of meaning, fit into 'machinery, tools, appliances and other equipment' as the court below concluded. *They are real estate.* But, on the other hand, the quinching towers are an absolutely necessary part of the process in making coke *and, therefore, come within the definition of machinery."* 405 Pa. at 432, 175 A. 2d at 862. (Emphasis supplied.)

At page 433, 175 A. 2d 862, the Court observed: "Therefore, it is obvious that the legislature, by this act, merely moved 'machinery . . .', which had by judicial interpretation been classified with real estate, into a separate class."

Finally at page 429, 175 A. 2d at 860 appears the following language: "Similarly, in our opinion, a criteria that says nothing is 'machinery, tools, appliances and other equipment' but is real estate because the said object requires a massive foundation to prevent vibration caused by its operation and an enclosure to prevent deterioration, is a totally unrealistic view and cannot be im-

only after the Court rejected the application of the "assembled industrial plant doctrine" to tax assessments—an application which had previously been used to assess mills and manufacturies under the statute.[5] The Court also rejected for assessment purposes the common law doctrine of fixtures under which improvements attached to the land must be considered real estate. Instead of applying these doctrines it was held that the foundations and structures were "absolutely essential integral parts of the machine" and hence were not part of the real estate.

It is always with reluctance that this Court declares a statute unconstitutional. Although we indeed sympathize with the appellants' contention that the amendments were intended to spur the lagging residential construction in Pennsylvania, the Legislature may not mend the Commonwealth's economy by tearing the fabric of our constitution.[6] It has been the opinion of this Court since 1909 that the uniformity clause

---

puted to the legislature's intention in enacting the amendments of 1953."

[5] Appellants cite only one case in support of the proposition that such improvements as those in *Jones & Laughlin* have been held to be real estate. *United Laundries, Inc. v. Board of Property Assessment, Appeals and Review*, 359 Pa. 195, 58 A. 2d 833 (1948). However, that case was decided under the old Fourth to Eighth Class County Assessment Law and rested solely on the ground that the improvements involved were real estate under the very assembled industrial plant doctrine which *Jones & Laughlin* rejected.

[6] In *Clearfield Bituminous Coal Corp. v. Thomas*, 336 Pa. 572, 9 A. 2d 727 (1939), this Court struck down a statute granting a tax exemption to forest lands because it violated Article IX, §2 of the Pennsylvania Constitution, in spite of the fact that Mr. Justice MAXEY declared that "the Commonwealth's policy of setting apart lands as forest reserves is a commendable one." Accord, *Christley v. Butler County*, 37 Pa. Superior Ct. 32 (1908). The constitution has since been amended to permit the exemption of forest lands from real estate taxation.

forbids the taxing of one man's land at a lower rate than another's simply because of the type of building erected, or the type of business conducted thereon. This is not to say that the *business* cannot be taxed according to its type. It merely means that one person's *real estate tax* must be computed in the same manner as his neighbor's.

In a final effort to escape interim assessments on their property, appellants argue that if we should find the 1963 amendments violative of the uniformity clause, as in fact we have, then the basic interim assessment law must also fail constitutionally because it too is an invalid classification. Specifically, appellants urge that there is no valid basis for distinguishing between land whose market value has increased because of new construction and land whose value has changed because of other factors, such as general market conditions.[7] We do not agree however that this latter distinction is a classification of real estate within the meaning of the uniformity clause.

No matter how an interim assessment statute is drafted, the property can be reassessed only when its

---

[7] The constitutionality of the basic interim assessment statute has already been upheld by this Court in *Prichard v. Willistown Twp. School District*, 394 Pa. 489, 147 A. 2d 380 (1959). However, since that case did not involve a challenge based on the *uniformity* clause, it is not controlling here. Appellants attempted to dispose of the case by arguing that it dealt with a reassessment of *finished* construction, and that had the statute been construed to allow reassessments on *unfinished* structures it would have been declared unconstitutional. Specifically, appellants' position is this: If the assessor can assess unfinished construction, there is no limit to the number of times a man's property can be valued each year. As a result one taxpayer may be assessed each month, while his neighbor is assessed only once a year. To dispose of this contention we need only point out that an attack on a statute's constitutionality, based upon a discriminatory *application*, cannot be successful without proof of such discrimination. No such proof has been offered.

value has increased. Accordingly, there must be some way to tell *when* it is worth more, and how much more it is worth. It would not only be unworkable as a practical matter to force an assessor to keep detailed records of all conditions that might affect the market value of a piece of land, but, ironically, were such a task dictated by our constitution as a prerequisite for an interim assessment, the vagueness and guesswork involved in *that* system would likely spawn the very untrammeled discretion that appellants fear. As a result, the Legislature has wisely directed that interim assessments be based on a barometer of increased value that is not only easy to read, but is also likely to give an accurate and fair measurement: the presence of physical improvements on the property. The basic interim assessment law does not classify real estate. It merely sets up a scale on which property is to be valued. No class is favored; and all real estate is subject to the same interim assessment statute provided its value increases on the measuring scale set up by the Legislature.

### The January 1964 Assessment: Appeal No. 91

Because it had declared the April and July assessments void on the basis of the 1963 amendments, and in order not to permit the appellants' improved land to go completely unassessed for 1964, the Board for the Assessment and Revision of Taxes held that the January assessment was an unfinished *annual* assessment made pursuant to the Act of June 26, 1931, P. L. 1379, §§7-8, 72 P.S. §§5348-49 (1950), as amended. However, the text of this statute contains an assessment timetable indicating that annual assessments are to be made by September 15 of the preceding tax year. As a result the appellants argue that an assessment made in January cannot qualify under the statute, and in

the alternative argue that if the timetable be construed as directory only, then the statute must fail on constitutional grounds. Specifically it is urged before this Court that a provision permitting annual assessments to be made at any time the assessors please would be so vague and open to discrimination as to violate the uniformity clause of the constitution.

In view of our disposition of Appeal No. 90, however, we need not face any of these arguments. Even a cursory study of the record, briefs and lower court opinions in these two cases indicates that the January assessment was called an "unfinished annual" rather than an "interim" assessment solely because the board believed that as an interim assessment it could not stand. But since the interim assessments struck down by the board have now been validated, and since there is nothing in the interim assessment statute indicating that a September annual assessment *must* be made during the preceding year before a January interim assessment can be,[8] we agree with the court below that the January assessment ought not be invalidated "for a trivial difference in labelling."[9] It is of course true that an annual assessment operates on the entire year while an interim assessment is effective only for that part of the year remaining after the assessment is made. But, since the assessment here was made on January

---

[8] The only requirement for making an interim assessment, other than the presence of new construction, is that the construction occurs after a tax duplicate has been prepared. Although no duplicate was made in September 1963, there do exist tax duplicates for September 1962, and it is on the basis of this valuation (probably as an unimproved lot) that the appellants will be taxed if no interim assessment is made. From a policy viewpoint, the interim assessment statute is even *more* applicable when it has been over a year since the last assessment was made.

[9] The January 1964 assessment was, in fact, sent out on an interim assessment form. Appellants' exhibit "A."

1, 1964, appellants will pay the same tax no matter how the assessment is labelled.

For the foregoing reasons the judgments of the court below in Appeals Nos. 90 and 91 are affirmed.

Mr. Justice EAGEN concurs in the result.

Mr. Chief Justice BELL took no part in the consideration or decision of these cases.