George T. Kenney et al., Appellants *v.* Keebler Company, Appellee

Keebler Company, Appellant *v.* George T. Kenney et al., Appellees.

508

Argued June 4, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., ROGERS, BLATT, CRAIG, MACPHAIL and WILLIAMS, JR. Judge MENCER did not participate.

*Judith N. Dean,* Deputy City Solicitor, with her *Marjorie H. Stern,* Assistant City Solicitor, *Alan J. Davis,* City Solicitor, and *T. Michael Mather,* Chairman of Litigation Department, for George T. Kenney et al.

*Henry T. Reath,* with him *Sheri B. Friedman,* and *Alexis J. Anderson, Duane, Morris & Heckscher,* for Keebler Company.

*David A. Scholl,* for Katie Leavell et al.

*Christoper F. Stouffer, Hamilton, Darmopray and Malloy,* for Amicus Curiae, Center City Residents' Association.

OPINION BY JUDGE WILKINSON, JR., August 21, 1980:

The instant case involves the objections of a variety of real estate owners in the City of Philadelphia (taxpayers) to the assessments of the Board of Revision of Taxes (Board) for the years 1975 through 1978. The Court of Common Pleas of Philadelphia County (Court) separated the issue of the ratio of assessed value to fair market value, common to each case, and decided this as one issue. The fair market value of each property, of course, had to be individually determined. The fair market values are not in issue here.

By decision and order of November 10, 1978 the court rejected the taxpayers' method[1] of determining the proper ratio of assessed value to market value and accepted the calculation method of the Board with

_____

[1] Taxpayers would determine the actual ratio between assessed value and fair market value by dividing the sum of all recorded fair market value sales in the taxing district into the sum of the assessments for the same property.

some modification.[2] The court modified the Board's exclusion of certain transactions in which the ratio of assessment to sales price was quite low[3] by including approximately 50% of these sales. Based on the evidence before it the Court found particular ratios for each tax year in question.[4] Finally, the court recognized a pervasive lack of uniformity and directed the Board to reassess for the future every property in the taxing district.

Taxpayers excepted to the court's adoption of the Board's method of calculation of ratio and to the exclusion of 50% of low ratio transactions in the calculation. The Board excepted to the court's inclusion of 50% of low ratio transactions in the calculation and to the order to reassess. By decision and order of July 18, 1979 the court dismissed all exceptions. It is that order which is now before us.

All taxes on real property in Pennsylvania must be uniform within a taxing district. Pa. Const. art. VIII, §1. *Summit House Real Property Assessment Appeals*, 22 Pa. Commonwealth Ct. 462, 349 A.2d 505 (1975). The ratio of assessed value to market value used by a taxing authority must be applied equally and uniformly to all real estate in the jurisdiction. *Mc-*

---

[2] The Board determined the actual ratio between assessed value and fair market value by breaking the properties into six land use categories, computing an unweighted ratio for each category, estimating the total fair market value of each category, calculating a city wide weighted ratio by summing the total estimated fair market value for all property in the taxing district, and dividing this figure by the total assessed value. The six land use categories used were residential, apartment building/hotels, stores with dwellings, commercial, industrial and vacant.

[3] Transaction with less than 20% ratios. Both the Board and taxpayers eliminated all sales with ratios exceeding 100%.

[4] The tax ratios as found by the court for the years indicated are as follows: 1975—47.44%; 1976—46.98%; 1977—44.66% and 1978—44.1%.

*Knight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 209 A.2d 389 (1965).

The taxpayer's method of assessing uniformity of tax calculation is the one commonly utilized in Pennsylvania and specifically approved by the Pennsylvania Supreme Court. *Deitch Co. v. Board of Property Assessment,* 417 Pa. 213, 209 A.2d 397 (1965). *See also Massachusetts Mutual Life Insurance Co. Tax Assessment Case,* 426 Pa. 566, 570-71, 235 A.2d 790, 792 (1967), approving the Superior Court's conclusion that "the lower court had erred in proceeding under a theory which differed from *Deitch.*"

The Board's procedure deviated substantially from the common and accepted methodology of *Deitch.* A search of Pennsylvania cases does not provide any precedent for this novel approach to tax ratio calculation nor does the Board provide us with any such Pennsylvania law.[5]

Judge KALISH of the Common Pleas Court of Philadelphia held four days of hearings. The record consists of 933 pages, 733 of which are the testimony of three experts, two for the taxpayers and one for the Board. Judge KALISH wrote two exhaustive opinions, the original opinion being 12 pages and the opinion dismissing exceptions 21 pages. Even after this able and thorough analysis of the testimony we are troubled by the complexity of the calculations used in the so-called "stratification" methodology adopted:

The Board's expert, Dr. Raymond Richman, calculated his ratios by first breaking his

---

[5] A calculation methodology akin to that advocated by the Board is used in New York, not without substantial judicial criticism. *860 Executive Towers v. Board of Assessors of County of Nassau,* 84 Misc. 2d 525, 377 N.Y.S.2d 863, 874 (Sup. Ct. 1975), *aff'd* 53 App. Div. 2d 463, 385 N.Y.S.2d 604 (App. Div. 1976), *aff'd sub. nom., Pierre Pellation Apartments, Inc. v. Board of Assessors of County of Nassau,* 43 N.Y.2d 769, 372 N.E.2d 801, 401 N.Y.S.2d 1013 (1977).

sample into six land uses. Next, he computed the *unweighted* ratios for properties in each land use category. Then he estimated the total fair market value of every parcel in each land use type. Finally, he calculated the city wide *weighted* ratio by summing the total estimated fair market value for every parcel in the City and divided by the total assessed value. (Emphasis in original.)

The policy of allocating taxes on an equitable and comprehensible basis is old and strong:

> While every tax is a burden, it is more cheerfully borne when the citizen feels that he is only required to bear his proportionate share of that burden measured by the value of his property to that of his neighbor. This is not an idle thought in the mind of the taxpayer, nor is it a mere speculative theory advocated by learned writers on the subject, but it is a fundamental principle written into the constitutions and statutes of almost every state in this country.

*Delaware, Lackawanna & Western Railroad Co.'s Tax Assessment (No. 1)*, 224 Pa. 240, 243, 73 A. 429, 430 (1909). In our opinion, the method of calculation adopted by the trial court and now before us will not be understood by the average taxpayer.

Even more fundamental is the question of whether the division of property into selected land use categories for purposes of ratio calculation comports with the constitutional mandate of uniformity and the dictate of *Deitch* that all property be treated as a single class. Real estate, for taxation purposes, may not be validly divided into classes. *Madway v. Board for the Assessment and Revision of Taxes*, 427 Pa. 138, 233 A.2d 273 (1967); *Valley Forge Golf Club, Inc. Tax Appeal*, 3 Pa. Commonwealth Ct. 644, 285 A.2d 213 (1971).

We cannot accept the intricate ratio procedure adopted below. It is a system too involved to be understood and accepted by other than the most sophisticated property owners.

On the question of the methodology of ratio calculation and the inclusion of 50% of low ratio transactions in the calculations we accept the court's decision. We specifically reject the contention of the Board that the court may not adopt and modify its expert's opinion. *Westinghouse Electric Corp. v. Board of Assessment Appeals,* 30 Pa. Commonwealth Ct. 264, 373 A.2d 766 (1977).

With regard to the portion of the court's order invoking the injunctive relief of reassessments, the Board contends that the court has gone beyond the issues before it and beyond its subject matter jurisdiction. Act of June 27, 1939, P.L. 1199, *as amended,* 72 P.S. §5341.1 et seq., provides the remedy available to aggrieved taxpayers. Any person seeking equity's jurisdiction must prove not only a constitutional question involved but also that the legal remedy is inadequate. *King v. Commonwealth,* 41 Pa. Commonwealth Ct. 329, 398 A.2d 1117 (1979); *Appeal of Cedarbrook Realty, Inc.,* 39 Pa. Commonwealth Ct. 150, 395 A.2d 613 (1978). Further, the statutory remedy is preferred as a more efficacious manner of litigation of assessment questions. *See Rochester & Pittsburgh Coal Co. v. Board of Assessment Appeals,* 438 Pa. 506, 266 A.2d 78 (1970). *See also Hudson v. Union County,* Pa. Commonwealth Ct. , 413 A.2d 1148 (1980).

The facts of the instant case fail to rise to the level necessary to invoke equity. The court below itself concludes that the case does not specifically present a question on the validity of the statute. Further, we do not believe it has been shown that the statutorily provided remedies are inadequate. Because we find the equity jurisdiction exercised by the trial court im-

proper we need not discuss the assertions of the Board that the equitable relief granted was not made out in the pleadings nor included in the original terms of the consolidated hearing, that there was no notice to the Board that the court would consider equitable remedies in this statutory appeal, that the order compels future acts contrary to general mandamus principles and that the order adversely affects the public interests.

Accordingly, we will enter the following

ORDER

AND Now, August 21, 1980, the order of the Philadelphia Court of Common Pleas dated July 18, 1979 and indexed to No. 1156 March Term 1976, No. 861 March Term 1977, and No. 286B February Term 1978, is reversed. The case is remanded to the Court of common pleas to determine the appropriate ratios consistent with the above opinion.

Judge MACPHAIL concurs in the result only.

---

DISSENTING OPINION BY JUDGE WILLIAMS, JR.:

I respectfully dissent.

It is my opinion that the majority misconstrues the *Deitch* case. Nowhere in the *Deitch* opinion does the Supreme Court set forth any *one* method as the exclusive means of determining the "common level." For example, the Supreme Court's opinion states, on Page 220, that "where the evidence indicates that no such fixed ratio has been applied, and that ratios vary widely in the district, the average of such ratios *may* be considered the 'common level'."

Also, on Page 221 of the *Deitch* opinion, the Court added the following: "Furthermore, it may be that the evidence will show some percentage of assessed to market value about which the bulk of individual assessments tend to cluster, in which event such percent-

age *might* be acceptable as the common level.'' On Page 223 the Supreme Court went on to say: "The evidence supplied by the taxpayer in *Brooks** illustrates *one method* by which a taxpayer can meet his burden of proving a lack of uniformity, *but we do not consider it to be the only method.* It would be equally satisfactory to produce evidence regarding the ratios of assessed values to market values as the latter are reflected in actual sales of any other real estate in the taxing district for a reasonable period prior to the assessment date.'' (Emphasis added.)

Nowhere in the *Deitch* case is there any reference to what is meant by "average'' ratio. Is it a weighted average or an unweighted average or a combination of both? Neither the Legislature nor the Appellate Courts have specified the method of calculation. The lower court wisely considered both methods used in the sales-ratio study by both the Board and the taxpayers, the *biases inherent* in each, the credibility of the experts, and the weight to be given to their testimony. By that process the lower court arrived at a just and fair conclusion. Weight and credibility are for the fact-finder. There is absolutely nothing to show that the trial judge "erred in proceeding upon a theory which differed from that in *Deitch*''.

The majority misconstrues the use by the Board of the stratification of the sales samples. Under our law, as the lower court recognized, there is only one class of real estate for tax purposes and there cannot be a different ratio for commercial, industrial, residential, etc. All properties are comparable in constructing the appropriate ratio. The court simply approved dividing the large group of heterogeneous properties within the

---

*\*Brooks Building Tax Assessment Case*, 391 Pa. 94, 137 A.2d 273 (1958), the taxpayer produced evidence that several properties were assessed at ratios ranging from 40.2% to 57.2% while his property was assessed at 91.9%.

district into more homogeneous classes, *in order to lessen the biases and distortions* in each method and to arrive at a more overall equitable result *based on the district as a whole,* with one ratio for all property.

The methodology approved by the lower court was that propounded by the Board's expert witness. The weight of that witness's opinion was for the lower court, as fact-finder, to determine. *Moodie v. Westinghouse Electric Corp.,* 367 Pa. 493, 80 A.2d 734 (1951). That is true even though the majority of an appellate court would have weighed the opinion differently. And, it cannot be said that the method of calculation advanced by the Board's expert, and approved by the court below, violates any dictate of the *Deitch* case.

The lower court wrote:

> The appellate courts have not rigidly defined the concept of average ratio . . .although the Court views both methodologies as valid, the Board's procedure is seen as more accurate and appropriate for this case as it is the one that truly covers the entire taxing district.

In that regard, I cannot see why it would be any more difficult for the average taxpayer to understand the Court's approach, than it would be to understand that advanced by the taxpayer litigants in this case.

More disturbing to me is the short shrift the majority gives the taxpayers' use of equity to seek their constitutional right of uniformity. These taxpayers seek the aid of equity because the statutorily prescribed remedies are inadequate. How can the individual owner of residential property in Philadelphia, seeking individual relief before the Board, possibly solve the city-wide constitutional controversy which has taken legal form in these proceedings?

In *Borough of Green Tree v. Board of Property Assessments,* 459 Pa. 268, 328 A.2d 819 (1974), the Supreme Court held that equity was available to enter-

tain a constitutional challenge to tax assessments under the uniformity clause. The Court's opinion expressly recognized that individual appeals to an assessment board are not an adequate means to resolve the issue. In Justice ROBERTS' concurring opinion he said:

Tax appeals boards were created to review real estate assessments. They are totally unsuited both by skill and purpose to adjudicate constitutional issues. The Board procedures may perhaps be adequate for deciding individual claims of improper assessment, but they are plainly inadequate when faced with a broadbased attack on the constitutionality of a taxing statute or the assessment procedure.

Not only is the statutory remedy inadequate to resolve the constitutional issue involved in each of the tax cases before the lower court, there is no provision in Philadelphia County for the Board to entertain a class action. Accordingly, a class action in equity is a proper device to resolve the constitutional question. To restrict the taxpayers of Philadelphia to an inadequate statutory remedy is to delay the eradication of unconstitutional assessment practices and to permit some people to elude bearing their fair share of the common tax burden.

I would affirm the lower court.

President Judge CRUMLISH joins.