436 A.2d 589

**In re Appeal of the TOWNSHIP OF SOUTH WHITEHALL, a Municipal Corporation and First Class Township, from the Decisions of the Board of Assessment Appeals of the County of Lehigh, Commonwealth of Pennsylvania.**

**Appeal of HOLIDAY INNS, INC. and Laneco, Inc.**

Supreme Court of Pennsylvania.

Argued April 27, 1981.

Decided July 8, 1981.

Anthony R. Thompson, Allentown, for Holiday Inns.

James L. Weirbach, Allentown, for Laneco, Inc.

J. Jackson Eaton, III, Allentown, for Tp. of South White-hall.

Alfred K. Hettinger, Allentown, for County of Lehigh.

Henry T. Reath, Alexis J. Anderson, Philadelphia, amicus curiae for appellants.

Before ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Like its companion *Keebler Co. v. Philadelphia Board of Revision of Taxes,* 496 Pa. 140, 436 A.2d 583 (1981), this matter involves the assessment of real property. For the reasons which follow, the orders of both the Court of Common Pleas of Lehigh County and the Commonwealth Court are vacated and the record remanded to the court of common pleas.

In 1972, the County of Lehigh entered into an agreement with the appraisal firm of Cole-Layer-Trumble (CLT) for the establishment of fair market values of properties within the County. CLT completed the project in 1974. Lehigh County then assessed the properties at 50% of the CLT appraisals, effective as of the 1975 tax year.

Included among the properties assessed were those of taxpayers, appellants Holiday Inns, Inc., and Laneco, Inc. Taxpayer Holiday Inn, owner of a 294-unit motel complex and 25 acres of land, had its property assessed at $1,099,170. Taxpayer Laneco, which owns a retail establishment and 12.5 acres of land, had its property assessed at $574,550.

Appellee South Whitehall Township, in which the properties of taxpayers are located, believed that County officials had underassessed several commercial properties within its taxing district, including those of taxpayers. South Whitehall filed appeals with the Lehigh County Board of Assessment Appeals, seeking to increase the assessments. The County Board increased Holiday Inn's assessment $12,070, to $1,111,240 and Laneco's $170,600, to $745,150. South Whitehall then sought a further increase of the commercial assessments by appealing the County Board's determinations to the Court of Common Pleas of Lehigh County. Taxpayer Laneco also appealed, seeking a reduction of its assessment. Holiday Inn did not appeal.

The court of common pleas held evidentiary hearings on the "common level" ratio of the taxing district. See Part I of *Keebler Co.,* supra, 496 Pa. at 140, 436 A.2d at 583; *Deitch Co. v. Allegheny County Board of Property Assessment,* 417 Pa. 213, 209 A.2d 397 (1965).* At the hearings, taxing authorities introduced the assessment records as well as a resolution of the Lehigh County Commissioners showing that the stated ratio of 50% had been applied. Taxpayers contended, as they contend now, that the common-level ratio was lower than the stated ratio of 50%. Taxpayers introduced an analysis prepared from reports of raw sales data which the County had forwarded to the State Tax Equalization Board. See Act of June 27, 1947, P.L. 1046, § 1 et seq., 72 P.S. § 4656.1 et seq. (1968). This analysis indicated that taxing officials actually employed a ratio of 36.61%.

Although taxpayers introduced only their analysis of the County's sales data, and in no respect sought to introduce calculations of the State Tax Equalization Board, South Whitehall objected on the ground that taxpayers' analysis is barred by section 17 of the Act of June 27, 1947. Section 17 provides:

> "Nothing contained in this act shall be construed to change or affect the validity of the assessed valuation of any real property for the purpose of levying taxes by any political subdivision."

The trial court overruled South Whitehall's objection. However, the court concluded that the common-level ratio was the stated ratio of 50%. In rejecting taxpayers' claim that a lower ratio had been employed, the court stated:

> "It seems clear ... that the discrepancy between the fixed assessment ratio applied to appraised values for 1975 and the ratio between assessment and actual prices paid in 1975 real estate transactions has been caused by inaccurate appraisals and not by a failure to assess taxes at a common level."

---

* The trial court also determined the fair market values of taxpayers' properties. Holiday Inn's property was valued at $3,700,000, and Laneco's at $1,490,290. These determinations are not in dispute on this appeal.

Applying the stated ratio of 50% to the fair market values of taxpayers' properties, see supra note *, the court set Holiday Inn's assessment at $1,850,000 and Laneco's at $745,150.

On taxpayers' appeals, the Commonwealth Court affirmed on a substantially different theory from that relied upon by the trial court. In the Commonwealth Court's view, the trial court should have sustained South Whitehall's objection to taxpayers' analysis prepared on the basis of sales data which the County had submitted to the State Tax Equalization Board. The Commonwealth Court was "unable to discern any difference" between the use of the calculations of the State Board and the use of data from reports forwarded to the State Board by counties. According to the Commonwealth Court,

> "[t]he computer printout purchased from the county and offered into evidence by [taxpayers] was titled 'Report to the State Tax Equalization Board.' It was prepared by the county pursuant to the mandate of Section 9 of the Act for the purpose of submission to the [State Tax Equalization Board]. Under these circumstances we must conclude the distinction is without substance."

*Appeal of Holiday Inns, Inc.,* 38 Pa.Cmwlth. 561, 565 & 565–66, 394 A.2d 653, 656 & 656 (1978). This Court granted allowance of appeal and heard argument on the matter together with *Keebler Co.,* supra.

The scope of section 17 of the Act of June 27, 1947, has not been squarely decided by this Court. Thus far, this Court has held only that figures prepared by the Board and offered in a tax assessment proceeding must reflect "the entire taxing district, and not merely . . . a portion of the district." *Pittsburgh Miracle Mile Town & Country Shopping Center, Inc. v. Allegheny County Board of Property Assessment,* 417 Pa. 243, 247, 209 A.2d 394, 396 (1965).

In *Miracle Mile,* this writer and two other members of the Court expressed the view, "not expressed by the majority," that

> "equalization figures compiled by an expert state research agency would be relevant and helpful in the determination

of the issue of uniformity. See *In re Matter of Kents*, 34 N.J. 21, 166 A.2d 763 (1961); Notes, "Inequality in Property Tax Assessments: New Cure for an Old Ill," 75 Harv.L. Rev. 1374 (1962). In assessment cases, as elsewhere, the best evidence available should govern. *Kemble's Estate*, 280 Pa. 441, 447, 124 A. 694, 697 (1924). Of course, such evidence should not be deemed conclusive but rather as one factor among others which is entitled to evidentiary weight and due consideration. The writer would hope, therefore, that the Legislature might take action to remove any obstacle which may exist by virtue of Section 17 of the Act of June 27, 1947."

417 Pa. at 248 n.3, 209 A.2d at 396 n.3. Thus far, the Legislature has not chosen to "remove any obstacle which may exist . . . ."

█ Nonetheless, we are convinced that neither section 17 nor any other provision of the Act of 1947 bars the introduction of an analysis prepared from sales data submitted by the County to the State Board. If the same sales data had not been submitted to the Board, surely it would have been admissible. There is no question that sales datum contained in the County's report can be a "factor . . . entitled to evidentiary weight and due consideration" in the determination of fair market values within the taxing district. As discussed in *Keebler Co.*, supra, this Court's decision in *Deitch Co. v. Allegheny County Board of Property Assessment*, supra, specifically held that sales data are a permissible means of constructing a taxing district's common-level ratio. 417 Pa. at 223, 209 A.2d at 403. There is no basis to conclude that the Legislature intended that sales data should become inadmissible simply because they later are made a part of a record which the County submits to the Board. Certainly the caption of the County's report does not transform the contents. And we have observed that the "only purpose" of the Act of 1947 "is to enable the state school subsidy to be divided fairly by substituting the market value found by the Board for the local assessed value in the formula by which the [state school] subsidy is allocated."

*Newport Township School District v. State Tax Equalization Board*, 366 Pa. 603, 606, 79 A.2d 641, 642 (1951). Thus it was proper for the trial court to permit taxpayers to introduce the records of actual sales and taxpayers' analysis.

■ Equally erroneous is the trial court's conclusion that the stated ratio of 50% must govern. After hearing all the evidence, the trial court specifically attributed the discrepancy between the stated ratio and the ratio as calculated by taxpayers to "inaccurate appraisals," not to inflated sales prices. As is suggested by South Whitehall's challenges to the assessments of numerous commercial properties, including those of taxpayers, this determination must mean that the CLT appraisals understated the market values of the properties included in the sales data. As *Deitch* repeatedly makes clear, the inquiry into "common level" focuses upon the ratio of assessments to market values. 417 Pa. at 223, 223 & 224, 209 A.2d at 401, 402 & 403. Thus, once the court determined that the appraisals used by the County were too low, the trial court could not have accepted the stated ratio of 50%.

Nor on this record can it be concluded that taxpayers' proposed ratio of 36.61% should have been accepted. Although we have held that sales data may be employed to construct a common-level ratio, *Deitch*, supra, we have admonished in *Keebler Co.*, decided this day, that "raw sales data are not always reliable substitutes for the fair market value of a taxing district." 496 Pa. at 149, 436 A.2d at 587. Moreover,

"[w]ithout adjustments beyond the elimination of non-arm's-length transactions, there is a serious risk that the calculations of common-level ratios will reflect not the taxing district, but only the sample of properties sold."

496 Pa. at 150, 436 A.2d at 588. The present record indicates that taxpayers excluded from their raw sales data transactions among relatives, transactions involving governmental units, transactions for nominal consideration, and certain unusual transactions. However, the record does not indicate that the sales data were in any way adjusted to reflect the composition of the taxing district. Whether

further adjustments of the sales data and corresponding adjustment of the common-level ratio are necessary, in light of *Keebler Co.*, must initially be determined by the trial court. Accordingly, we remand the record to the court of common pleas for such a determination.

Orders of the Commonwealth Court and the court of common pleas vacated and record remanded for proceedings consistent with this opinion.

O'BRIEN, C. J., and WILKINSON, J., did not participate in the consideration or decision of this case.

LARSEN, J., filed a concurring and dissenting opinion.

LARSEN, Justice, concurring and dissenting.

I concur that the sales data and analysis submitted by the taxpayer were properly admitted by the trial court. I dissent, however, from that portion of the majority opinion which directs the trial court, on remand, to determine the common level ratio in light of *Keebler Co. v. Board of Revision of Taxes of Philadelphia County*, 496 Pa. 140, 436 A.2d 583. Real estate may not be validly divided into classes for the purpose of calculating the common level ratio. *See Kenney v. Keebler Co.*, 53 Pa.Cmwlth. 507, 419 A.2d 210 (1980) (opinion by Wilkinson, J.).