582 F.2d 810
 Donald F. GARRETT, Sharon B. Garrett, Vera A. Turpin
v.
James B. BAMFORD, Chairman, David Shirey, Stewart DeTurk,
Board of Assessment Appeal, County of Berks.
Donald F. Garrett, Sharon B. Garrett, Vera A. Turpin, Annie
Louise Inman, Nancy Anne Johnston, Clarence G.
Coad, Marilyn C. Coad, Gable Gidden and
William Crawford, Appellants.
 No. 77-2556.
 United States Court of Appeals, Third Circuit.
 Argued June 23, 1978.
Decided Aug. 11, 1978.
 
 Harold E. Kohn, Stuart H. Savett, Donald L. Weinberg, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., for appellants.
 Edwin P. Rome, Matthew J. Siembieda, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., Joseph E. DeSantis, Terry D. Weiler, McGavin, DeSantis & Koch, Reading, Pa., for appellees.
 Before SEITZ, Chief Judge, and ALDISERT and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 When this case was previously before us in 1976, Garrett v. Bamford, 538 F.2d 63, (Garrett I ), we determined that the Pennsylvania statutory procedure to review county real estate tax assessments did not provide appellants with the "plain, speedy and efficient remedy" in Pennsylvania courts to make operative the prohibition of the Tax Injunction Act, 28 U.S.C. § 1341. Thereafter, in 1977, obviously in response to our decision, Pennsylvania amended the tax assessment statutory review procedure. This appeal requires us to decide if the legislative solution has met the concerns identified in Garrett I. The district court held that it did and dismissed the action; the plaintiffs again appeal. We hold that the district court correctly evaluated the subsequent change in Pennsylvania law, and that the court properly abstained from further proceedings, but that the court should have retained jurisdiction pending state court proceedings by the appellants.
 
 I.
 
 2
 Here, as before, we are required to interpret the congressional mandate expressed in the 1937 Tax Injunction Act:The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.
 
 
 3
 28 U.S.C. § 1341.
 
 
 4
 Appellants have requested a federal forum to adjudicate a Fourteenth Amendment Equal Protection claim on behalf of a class of owners and occupants of residential property in areas of substantial concentrations of non-white population within Berks County, Pennsylvania. Their complaint alleges that the properties owned or occupied by them and class members are assessed for purposes of real estate taxes at values which are higher than the values assigned to similar properties in predominantly or exclusively white areas of the county; moreover, they allege that the assessments on their properties constitute a greater percentage of their actual value than is the case with properties in white areas generally. Appellants seek a nondiscriminatory assessment of Berks County residential property.
 
 
 5
 We previously determined that if appellants were able to bring their "action in the Pennsylvania courts of equity, they would have an adequate remedy," 538 F.2d at 68. But we also stated that there was "substantial uncertainty as to the availability of a Pennsylvania equity forum. . . ." 538 F.2d at 70. We adhere to this view. Our present inquiry, therefore, tracks a narrow compass. We are required to decide if the state procedure affording administrative appeal with judicial review which we previously deemed inadequate only because class action relief was unavailable and the legal remedies required multiple suits involving identical issues against the same defendants, 538 F.2d at 71 now meets the congressional test of "a plain, speedy and efficient remedy."
 
 
 6
 To understand the 1977 Pennsylvania amendment, it is necessary to consider the state's statutory schema of reviewing assessments and assessment procedures. In Garrett I, we described these procedures as follows:
 
 
 7
 The statutory remedy . . . is contained in the assessments legislation for counties of the third class, 72 P.S. § 5342 et seq. (Supp.1975). The statute creates a three-member Board of Assessment Appeals, 72 P.S. § 5342 (Supp.1975), which must cause annual assessment of property within its jurisdiction. 72 P.S. § 5344 (Supp.1975). Assessments must be completed by the fifteenth of August of each year, 72 P.S. § 5347 (1968), and property owners must be duly notified. 72 P.S. § 5348 (1968). "Any person aggrieved by any assessment, whether or not the value thereof shall have been changed since the preceding annual assessment . . . may appeal to the board for relief." 72 P.S. § 5349(c) (Supp.1975). Parties must be notified of hearings and the board has "the power to compel the attendance of witnesses and the furnishing of documents." 72 P.S. § 5349(d) (Supp.1975). A final decision of the board may be appealed to the court of common pleas, which may proceed de novo. 72 P.S. § 5350 (Supp.1975).
 
 
 8
 In the case of real property, the court shall determine, from the evidence submitted at the hearing, what ratio of assessed value to actual value was used generally in the taxing district, and the court shall direct the application of the ratio so found to the value of the property which is the subject matter of the appeal . . . .
 
 
 9
 Id. Decisions of the court of common pleas may be appealed. Id.
 
 
 10
 538 F.2d at 70 (footnote omitted).
 
 
 11
 Isolating the deficiency in this procedure, we noted that the "statutory remedy is clearly designed for an Individual taxpayer to appeal his Individual assessment," 538 F.2d at 70 (emphasis added). Thus, in 1977, the Pennsylvania legislature sought to remove this deficiency by enacting an addition to 72 P.S. § 5349(c)(2):
 
 
 12
 For the purpose of assessment appeals under this act, the term "person" shall include, in addition to that provided by law, a group of two or more persons acting on behalf of a class of persons similarly situated with regard to the assessment.
 
 
 13
 As amended 1977, Aug. 5, P.L. 182, No. 48, § 1, imd. effective.
 
 II.
 
 14
 In arguing that the 1977 amendment does not solve their problem, appellants present five contentions: (a) the amended statute does not provide for class action assessment appeals in the state courts, but only at the administrative level; (b) the state remedy still fails to provide for the elimination of the discrimination; (c) the state remedy still fails to provide ongoing relief; (d) plaintiffs are time-barred from bringing this action in the state courts; and (e) the district court's dismissal violated the rule that jurisdiction is determined conclusively at the time of the filing of the complaint and the principle that acts of state legislatures cannot restrict or destroy federal jurisdiction.
 
 A.
 
 15
 Appellants contend that although the 1977 amendments create a class action procedure in the administrative context, the amendments do not extend that procedure to judicial review of the agency action. Appellants believe that the legislative history of the amendments requires the anomalous conclusion that the Pennsylvania legislature intended that its newly-created class procedure before the Board of Assessment Appeals cannot continue as a class action in the state courts on appeal from an adverse agency decision. They rely on the fact that the following language was deleted from the initial bill during legislative debate prior to enactment:
 
 
 16
 (A)ny group of dissatisfied taxables, constituting a class, may, within thirty days from the final fixing of their assessments and valuations, appeal therefrom on behalf of the class, to the court of common pleas of said county, in the manner provided by law for appeals from assessments; . . .
 
 
 17
 H.R. 366, As reported from Comm. on Finance, H.R., as amended, April 18, 1977, Sess. 1977, 161st Gen. Assembly § 2 (1977). As enacted, the statute grants this right only to "any dissatisfied taxable or taxing district." 72 P.S. § 5350(a). They argue that failure to enact the proposed language indicates that the class provision is to apply only in the agency context. We think such misgivings are groundless for several reasons.
 
 
 18
 First, we categorically reject appellants' insinuation that "(e)ven in the procedural details the legislature has sought to get by with an inferior remedy, in the hope that this Court would find it nonetheless adequate." Reply Brief of Appellants at 6-7. Legislative history does indeed indicate that the legislature adopted the amendments in response to the court's previous decision, but there is absolutely no reason to suspect any motive other than to establish the means of obtaining complete relief in the state courts.
 
 
 19
 Second, other compelling reasons prevented the legislature from explicitly providing that the administrative class action may proceed as such on appeal to the state courts. The first, and independently conclusive, reason is that the Pennsylvania Constitution gives the state's supreme court exclusive power to establish rules of procedure for state courts; although the legislature makes substantive law, it is without power to control procedure. Pa.Const. Art. V, § 10(c). Thus, although the legislature was free to provide, as it did, for class proceedings before the administrative agency, it was not free to extend that procedure to appeals in the courts. In addition, even if rules of civil procedure were within the province of the legislature, it may well have deleted the provision cited by appellants only because it was deemed superfluous. As the law is written, a "taxable" may appeal to court; the legislature may have intended "taxable" to include a group of taxpayers who had challenged their assessments as a class in the agency proceedings. Be that as it may, the general assembly could not legislate the procedure to be followed in the state court.
 
 
 20
 The question thus becomes whether the existing rules of civil procedure which govern class actions, adopted by the state supreme court, Pa.R.C.P. No. 1701 Et seq., 42 Pa.C.S.A., would permit the taxpayer class to appeal as a class in the state courts. In the absence of some specific prohibition, and with the imprimatur of the legislature, we see no reason why such a class could not be certified in the state court under the normal rules governing class actions.
 
 
 21
 In Garrett I, we discussed the unavailability of class action relief as follows:
 
 
 22
 (T)he Pennsylvania Commonwealth Court recently upheld a lower court's rejection of an effort to form a class action out of an individual appeal for a board decision. Sharkey v. Showers, (18 Pa.Cmwlth. 363, 336 A.2d 453, 454 (1975)). An alternative reason from the court's decision was that a class action does not lie when the members of the class have failed to exhaust their administrative remedies. Id.
 
 
 23
 538 F.2d at 70. We believe the converse follows: that after exhausting administrative remedies As a class, an appeal as a class would lie. Certainly the language of Sharkey suggests as much.
 
 
 24
 As to appellants' attempt to assert a class action incident to an appeal, the lower court's dismissal of said action is affirmed. Neither our Rules of Civil Procedure, 12 P.S. Appendix, nor the statute in question recognize(s) a right to combine an appeal from an administrative action with an original cause of action. Furthermore, an original cause of action by an individual or in the form of a class action does not lie when the complainant or the members of the class on behalf of whom the action is brought have failed to exhaust their administrative remedies.
 
 
 25
 Sharkey, supra, 336 A.2d at 454.
 
 
 26
 Finally, we deem it significant that in Pennsylvania the right of appeal from agency decisions is of constitutional dimension. Pa.Const. Art. V, § 9 provides in part that
 
 
 27
 there shall be a right of appeal in all cases . . . from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; . . .
 
 
 28
 Recognizing that the provision does not in terms grant the right to an appeal by a class, we note, however, that it grants the right to appeal "in all cases." Because the case may now be instituted at the agency level on behalf of a class, we believe that the constitutional right of appeal would apply to the class rather than to its members as individuals.
 
 
 29
 Thus we cannot agree that Pennsylvania today does not provide for the class action relief in the state courts we thought to be unavailable in 1976.
 
 B.
 
 30
 But it is the quantum of relief available in the Pennsylvania courts against which appellants mount their main attack. They argue that the only remedy available on appeal to the courts is for the "assessment" to be lowered to the countywide average, a result, appellants contend, which "would only reduce, not eliminate, the discrimination complained of in this action." Appellants' Brief at 16. This contention requires us first to examine the relief sought and then to compare this with the remedy afforded by the statute. At bottom, the relief requested in the federal court is based on an Equal Protection claim alleging a present lack of uniformity in assessment practices and requesting that the court order that assessors apply the same ratio of market value to all real estate in Berks County; appellants demand no less, but no court, federal or state, can order more.
 
 
 31
 No matter how convoluted the appellants' arguments, we fail to perceive any relief which appellants can request through a federal claim bottomed on the Fourteenth Amendment that is not guaranteed them by Pennsylvania's Constitution, statutes, and case law. It is the very essence of the county real estate assessment schema, mandated by the Pennsylvania Constitution, that there be a uniform method of assessing real estate for local tax purposes:All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.
 
 
 32
 Pa.Const. Art. VIII, § 1.
 
 
 33
 Uniformity is generally expressed either in terms of actual market value or a ratio of the actual value of the property being assessed. Although properties may differ in value, the Pennsylvania Constitution requires that the ratio of this value be uniform throughout the taxing district. Deitch Co. v. Board of Property Assessment, 417 Pa. 213, 209 A.2d 397 (1965). Where assessors fail to adhere to the uniform ratio, "(a)ny person aggrieved by any assessment . . . may appeal to the Board for relief." 72 P.S. § 5349(c). If dissatisfied with the Board's determination, the aggrieved person or class has the unqualified right of De novo review in the court of common pleas. 72 P.S. § 5350. Significantly, the court is directed by statute (1) to given priority to these appeals, (2) to determine the uniform ratio being utilized in the taxing district, (3) to order the application of the uniform ratio to the properties under appeal and (4) to make such changes on the assessment "as may be right and proper." Thus, 72 P.S. § 5350 provides:
 
 
 34
 (a) After action on such assessments by said board, any dissatisfied taxable or taxing district may, within thirty days from the final fixing of his assessment and valuation, appeal therefrom to the court of common pleas of the said county in the manner provided by law for appeals from assessments; and it shall be the duty of the court at once to hear and determine said appeal, and, if necessary, to make such changes therein as may be right and proper. In the case of real property, the court shall determine, from the evidence submitted at the hearing, what ratio of assessed value to actual value was used generally in the taxing district, and the court shall direct the application of the ratio so found to the value of the property which is the subject matter of the appeal, and such shall be the assessment. From the decision of the court, an appeal may be taken as now provided by law and the taxable and/or taxing district having an interest therein who participated in the hearing before the court of common pleas shall be named as the appellees in any such appellate appeal.
 
 
 35
 "In determining, however, whether the (state's) constitutional requirement with respect to uniformity has been complied with in a taxing district, all properties are comparable in constructing the appropriate ratio of assessed value to market value. This is because the uniformity requirement of the Constitution of Pennsylvania has been construed to require that all real estate is a class which is entitled to uniform treatment. Buhl Foundation v. Bd. of Property Assessment, (407 Pa. 567, 180 A.2d 900 (1962)); Delaware L.&W.R.R. Tax Assessment (No. 1), 224 Pa. 240, 73 A. 429 (1909). In establishing such ratio in a particular district, the property owner, the taxing authority, and the courts may rely on any relevant evidence." Deitch Co. v. Board of Property Assessment, supra, 209 A.2d at 402-03.
 
 
 36
 We are therefore persuaded that the precise Equal Protection right of uniformity which appellants wish to assert in the federal courts is guaranteed by the Pennsylvania Constitution. To vindicate the right of uniformity for taxpayers as well as government bodies is the major function of the Boards of Assessments and the courts in reviewing real estate assessments. "Where an assessment is appealed to the common pleas court, it is the court's duty to 'direct the application of the ratio . . . (generally used in the taxing district) . . . to the value of the property which is the subject matter of the appeal.' Act of June 26, 1931, P.L. 1379, § 9, as amended, 72 P.S. § 5350." Pocono Downs, Inc. v. Board for Assessment, 11 Pa.Cmwlth. 81, 312 A.2d 452, 453 (1973). As between the standard of actual value and the standard of uniformity, uniformity must prevail. Buhl Foundation v. Board of Property Assessment, 407 Pa. 567, 570, 180 A.2d 900, 902 (1962). Moreover, under the statutory review, "(w)here the taxpayer's testimony is relevant, credible and unrebutted, it must be given due weight and cannot be ignored by the court. It must necessarily be accepted. McKnight Shopping Center, Inc. v. Board of Property Assessment, 417 Pa. 234, 242, 209 A.2d 389, 393 (1965); Kaemmerling's Appeal, 282 Pa. 78, 83, 127 A. 439, 441 (1925); Kemble's Estate, 280 Pa. 441, 447, 124 A. 694, 696 (1924)." Deitch Co. v. Board of Property Assessment, supra, 209 A.2d at 402. And, as is the case here, "(a) property owner claiming that his assessment is not uniform may carry his burden of proof by a showing that a lower ratio of assessment to actual value has been applied to similar properties." Valley Forge Golf Club, Inc. v. Board for Assessment, 3 Pa.Cmwlth. 644, 285 A.2d 213, 216 (1971).
 
 C.
 
 37
 Appellants also argue that the statutory remedy fails to provide continuing relief, and thus does not meet the Tax Injunction Act requirement of a "plain, speedy and efficient remedy." We disagree. Given that there is a statutory requirement of an annual assessment, 72 P.S. § 5344, that the Pennsylvania Constitution requires uniformity, and that the court of common pleas has the statutory power "to make such changes as may be right and proper," we fail to see how a federal court utilizing the Fourteenth Amendment can accord appellants any quantum of relief exceeding that which the state courts can order under the Pennsylvania Constitution and statutes.
 
 D.
 
 38
 Appellants contend that their relief is time-barred under state law because the named appellants did not file the necessary appeals in 1974 "within thirty days from the final fixing of his assessment and valuation" by the Board. 72 P.S. § 5350. In light of the retroactive application of the class action amendment to "all actions previously . . . instituted and presently pending," 1977 Aug. 5, P.L. 182, No. 48 § 3, 1977 Pa.Legis.Serv. 211, we are not impressed by this contention. To advance this argument to the dignity of serious consideration, appellants had at least a minimum obligation of demonstrating on the record that no member of the putative class had filed a timely appeal. If a member of the class had filed a timely appeal, the amendatory legislation makes the entire class the beneficiaries of the action. Cf., Pa.R.C.P. No. 1701, Explanatory Note 1977, 42 Pa.C.S.A. In the absence of a record showing that no member of the putative class filed a statutory appeal, we reject the contention that appellants' claims are time-barred.
 
 E.
 
 39
 Appellants' final argument is that federal subject matter jurisdiction was determined at the time their complaint was filed in August 1974, and that subsequent acts of a state legislature may not divest a federal court of jurisdiction. The starting point in any discussion of subject matter jurisdiction is the "fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." Owen Equipment & Erection Co. v. Kroger, --- U.S. ----, ----, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978). The Supreme Court has held that a congressional contraction of federal jurisdiction, without a saving clause applicable to pending cases, has the effect of destroying jurisdiction "even though the District Court had jurisdiction over such claims when petitioner's action was brought." Bruner v. United States, 343 U.S. 112, 115, 72 S.Ct. 581, 584, 96 L.Ed. 786 (1952). The Court noted consistent adherence to the rule that "when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law." Id. at 116-17, 72 S.Ct. at 584. Conversely, a statutory expansion of jurisdiction suffices to vest power in federal courts to adjudicate cases which arose prior to enactment of the jurisdictional statute. United States v. Alabama, 362 U.S. 602, 80 S.Ct. 924, 4 L.Ed.2d 982 (1960).
 
 
 40
 Drawing upon the foregoing principles, we must reject appellants' contention that jurisdiction is always determined upon the facts ascertainable when the complaint was filed, or that "events subsequent to filing of the suit will not work an ouster of jurisdiction", Appellants' Brief at 9, based on "the general notion that the sufficiency of jurisdiction should be determined once and for all at the threshold and if found to be present then should continue until final disposition of the action." Dery v. Wyer, 265 F.2d 804, 808 (2d Cir. 1959). The Second Circuit's approach is not so broad as the foregoing quotation might imply: "Generally, in a diversity action, if jurisdictional prerequisites are satisfied when the suit is begun, subsequent events will not work an ouster of jurisdiction." Id. (emphasis added).
 
 1.
 
 41
 At most, we start with a general principle that jurisdiction is Usually determined at the time an action is commenced and that subsequent events Normally will not deprive the court of jurisdiction. Policies underlying this principle may be said to be the enhancement of judicial economy and the finality of judgments. At war with those policies, however, is the strong federal policy of respect for the sovereign functions of the states, which underlies the principles of federalism and comity, which in turn justify the existence of the Tax Injunction Act, 28 U.S.C. § 1341.
 
 
 42
 When competing principles, each arguably acceptable as a starting point for legal reasoning, will lead to different results, we must examine the force and applicability of the reasons which support them. We deem the federal structure of our government as set forth in the Constitution and the congressional declaration that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law . . . ," Id., more than sufficient to outweigh the jurisprudential concern that jurisdiction "be determined once and for all at the threshold. . . ." Dery v. Wyer, supra, 265 F.2d at 808. In addition to constitutional limitations on federal intervention in state taxation, we face here a situation in which the state legislature acted promptly to cure the procedural defect in its taxation scheme which this federal court identified in 1976. Principles of federalism and comity are doubly applicable under such circumstances.
 
 
 43
 Thus, unless confronted with authoritative precedent or persuasive reasons to the contrary, we believe it appropriate to meet the question whether the statutory amendment provides a sufficient remedy under Pennsylvania law to bring into play the consideration of the Tax Injunction Act with its consequent destruction of federal jurisdiction.
 
 2.
 
 44
 We recognize that Bruner v. United States, supra, and United States v. Alabama, supra, dealt with congressional alteration of the subject-matter jurisdiction of the lower federal courts, resulting in retroactive application to pending causes. The precise question presented by appellants is whether, without any change in the boundaries of federal jurisdiction, subsequent State action can deprive the federal court of jurisdiction which existed when the suit was filed. Appellants attempt to advance their position along several avenues.
 
 
 45
 The first, that "federal jurisdiction cannot be restricted by acts of state legislatures or courts," Appellants' Brief at 10, states the obvious.[1] But when federal jurisdiction is, by federal statute, predicated on state law as it is in the Tax Injunction Act, changes in state law will inevitably vary the jurisdiction of the federal courts. The question is whether a change in state law After the commencement of an action in federal court can affect that court's jurisdiction over that case.
 
 
 46
 Appellants rely most heavily on Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 605, 71 S.Ct. 508, 510, 95 L.Ed. 573 (1951), which held:
 
 
 47
 The United States District Court had jurisdiction over this case in the first instance because of the uncertainty of the adequacy of a remedy in the state courts, and it did not lose that jurisdiction by virtue of the later clarification of the procedure in the courts of Connecticut. American Life Ins. Co. v. Stewart, 300 U.S. 203 (1937); Dawson v. Kentucky Distilleries Co., 255 U.S. 288 (1921).
 
 
 48
 When Spector had been before the Supreme Court on a prior appeal, Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944), the Court applied the abstention doctrine of Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), because of unresolved questions of state law. In keeping with Pullman -type abstention, the case was remanded to the district court "with directions to retain the bill pending the determination of proceedings to be brought with reasonable promptitude in the State court in conformity with this opinion." Spector v. McLaughlin, supra, 323 U.S. at 106, 65 S.Ct. at 155. In the state declaratory judgment action following remand, the highest state court "declined to pass" on the constitutional issue that was the substance of the federal litigation. Spector v. O'Connor, supra, 340 U.S. at 605, 71 S.Ct. 508. It was in that context, having directed the district court to retain jurisdiction in conformity with Pullman, that the Supreme Court stated that "it did not lose that jurisdiction by virtue of the later clarification of the procedure in the courts of Connecticut." Id.
 
 
 49
 While we are not persuaded that any authority cited by appellants establishes the sweeping rule that creation of a state remedy cannot, under any circumstances, oust a federal court of jurisdiction, we agree that Spector, supra, counsels retention of jurisdiction in the unusual setting of this case. We have already referred to the extensive litigation which has occurred in this case. Two years ago this court decided that federal subject-matter jurisdiction existed, based on an extensive analysis of state law. In this second appeal, we have once more been required to examine the state remedy in some detail, prophesying how Pennsylvania courts would construe the amendatory legislation. Yet there is no Pennsylvania precedent which demonstrates that our prediction is correct. We therefore believe that the federal forum should remain available to the appellants in the event that, contrary to our prophesy, the Pennsylvania courts do not interpret the amended remedy in a way which satisfies the requirements of the Tax Injunction Act.
 
 
 50
 Therefore, we must hold that the district court erred in dismissing the action solely because of Pennsylvania's amendment of its statutory tax assessment review procedures.
 
 3.
 
 51
 We believe, however, that the district court correctly perceived that the federal hand should be stayed in the face of the state legislature's response to our previous decision, and that abstention is appropriate in this case. As we have stated, the right which appellants seek to vindicate under the Fourteenth Amendment a uniform method of tax assessment of Berks County real estate is precisely the right guaranteed them under Article VIII, § 1 of the Pennsylvania Constitution. Because we think the state has provided an efficient vehicle to enforce that right, as evidenced by illustrative state court cases heretofore set forth in Part II. B., abstention in favor of state proceedings is proper. "As adequate state court review of an administrative review based on predominantly local factors is available to appellee, intervention of a federal court is not necessary for the protection of federal rights." Alabama Public Service Comm. v. Southern R. Co., 341 U.S. 341, 349, 71 S.Ct. 762, 768, 95 L.Ed. 1002 (1951); Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). "It is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided." Lorillard v. Pons, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). "If the state courts would be likely to construe the statute in a fashion that would avoid the need for a federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong." Harris County Commissioners Court v. Moore, 420 U.S. 77, 84, 95 S.Ct. 870, 876, 43 L.Ed.2d 32 (1975). Thus "it is in the public interest to avoid the needless determination of constitutional questions and the needless obstruction to the domestic policy of the states by forestalling state action in construing and applying its own statutes." Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 471, 65 S.Ct. 1384, 1394, 89 L.Ed. 1725 (1945) (Per Chief Justice Stone).
 
 III.
 
 52
 In sum, we are persuaded that the amendatory legislation meets the concerns expressed when this case was previously before us. In the view we take, it is not necessary that Pennsylvania afford specific relief in its courts of equity. We are persuaded that affording statutory review to members of a class cures the deficiencies. "A state remedy either in law or in equity will, if otherwise adequate, suffice to defeat jurisdiction."[2] We believe the state statutory remedy adequate.
 
 
 53
 Nevertheless, the jurisdiction once established in this case must be retained, lest the appellants lose their federal forum only to find their state remedies less readily available than we have predicted. The district court did not misuse its discretion in refusing to reach the merits; it should have abstained but retained jurisdiction pending the outcome of state proceedings.
 
 
 54
 The judgment of the district court will be reversed and the cause remanded for entry of an order consistent with this opinion.
 
 
 
 [1]
 "The jurisdiction of the federal courts is granted to them by the Constitution and laws of the United States, and no state legislation may impair, restrict, or destroy it." Darby v. L. G. De Felice & Son., Inc., 94 F.Supp. 535, 537 (E.D.Pa.1950) (Welsh, J.) (quoting from Barber Asphalt Paving Co. v. Morris, 132 F. 945, 949 (8th Cir. 1904))
 
 
 [2]
 C. Wright, Federal Courts 195 (3d ed.), citing Norton v. Cass County, 115 F.2d 884 (5th Cir. 1941)