# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kennett Consolidated School District | : | |
| | : | No. 253 C.D. 2019 |
| v. | : | |
| | : | Argued: November 12, 2019 |
| Chester County Board of Assessment | : | |
| Appeals, Chester County, PA | : | |
| | : | |
| Appeal of: | : | |
| Property Owner Autozone | : | |
| Development Corp. | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE McCULLOUGH                                    FILED:  February 28, 2020


Autozone Development Corporation (Taxpayer) appeals from the February 4, 2019 decision of the Court of Common Pleas of Chester County (trial court) that determined, following a nonjury trial, the fair market value and property assessment of Taxpayer's property for the years 2018 and 2019. In particular, Taxpayer challenges the trial court's November 9, 2018 denial of its motion to quash Kennett Consolidated School District's (District)[1] assessment appeal of its property located within Chester County (Property). Upon review, we affirm.

---

[1] New Garden Township and Chester County Board of Assessment join in the brief filed by District.

## Background

The background facts of this case are undisputed.[2]  This case's origins lie in assessment appeals filed by District.  By grant of statutory authority, a school district, under Section 8855 of the Consolidated County Assessment Law, has "the right to appeal any assessment within its jurisdiction in the same manner, subject to the same procedure and with like effect as if the appeal were taken by a taxable person with respect to the assessment."  53 Pa.C.S. §8855.[3]  District exercised its authority to do so, beginning with three emails sent in July of 2017.

---

[2] Before we begin with the analysis of the present issues, we first address District's request in its brief that this Court strike certain facts outside of the record.  District maintains the offending statements should be stricken as they violate the fundamental rule that an appellate court may only properly consider the facts duly certified in the record on appeal.  *HYK Construction Company, Inc. v. Smithfield Township*, 8 A.3d 1009, 1017 (Pa. Cmwlth. 2010).  However, our September 30, 2019 order has already granted in part and denied in part District's application to strike these identical statements.  Nevertheless, we reiterate that the offending statements have been appropriately disposed of; thus, the issue is presently moot before this Court and no further statements from Taxpayer's brief will be stricken.

[3] Section 8855 provides in full:

> A taxing district shall have the right to appeal any assessment within its jurisdiction in the same manner, subject to the same procedure and with like effect as if the appeal were [sic] taken by a taxable person with respect to the assessment, and, in addition, may take an appeal from any decision of the board or court of common pleas as though it had been a party to the proceedings before the board or court even though it was not a party in fact. A taxing district authority may intervene in any appeal by a taxable person under section 8854 (relating to appeals to court) as a matter of right.

53 Pa.C.S §8855.

The first email was sent on July 24, 2017, from District to Reeves Lukens, III (Lukens), requesting a review of all property assessments within the taxing district with recommendations for possible appeals to file against assessed properties. (Reproduced Record (R.R.) at 92a.) This email explicitly stated **"[p]lease do not limit your review to any particular class of properties in the [taxing district], but review all classes of properties including commercial, residential, and otherwise."** *Id.* (emphasis added). On July 26, 2017, Lukens identified 13 properties he described as having "a high probability of being underassessed by more than [$1 million] of market value." (R.R. at 93a.) Subsequently, on August 1, 2017, District identified 12 property assessments from which it decided to appeal. (R.R. at 94a.)

The assessment appeals were filed and a hearing was held on October 10, 2017. On October 20, 2017, the Chester County Board of Assessment Appeals (Board of Assessment) determined that the then-current assessment of Taxpayer's Property located at 965 West Cypress Street, New Garden Township, Tax Parcel ID No. 60-02-0044.0000, would remain valued at $536,960.00. (R.R. at 14a-16a.) On November 17, 2017, District appealed the decision to the trial court. (R.R. at 17a-22a.)

In its appeal, District claimed that the Property's value was less than the fair market value, the assessment was inconsistent with similarly situated properties, and the assessment did not reflect actual market value. *Id.* On December 24, 2017, Taxpayer filed an answer and new matter, denying the allegations of the appeal and claiming that the assessment was contrary to the law and Constitution of this Commonwealth. (R.R. at 23a-28a.) On May 2, 2018, Taxpayer requested a stay of the valuation phase until the issue of uniformity under the Pennsylvania Constitution

3

could be determined by the trial court. (Original Record (O.R.) at Item No. 7.) The following day, Taxpayer filed a motion for leave of court to take discovery. (R.R. at 36a-52a.) On June 30, 2018, the motion to take discovery was granted and the motion for the stay was denied. (R.R. at 53a.)

On October 30, 2018, Taxpayer filed a motion to quash the assessment appeal arguing that it was unconstitutional under the Uniformity Clause of the Pennsylvania Constitution, Pa. Const. art. VIII, §1. (R.R. at 54a-96a.) Attached as exhibits to the motion were the emails between District and Lukens. *Id.* District filed an answer in opposition on November 8, 2018. (R.R. at 97a-105a.)

A trial was held on November 9, 2018. (R.R. at 106a.) There, the trial court considered Taxpayer's motion to quash the appeal.[4] (R.R. at 108a.) Taxpayer did not present any additional evidence or testimony in support of the motion other than the attached exhibits. (R.R. at 109a.) In support of the motion, Taxpayer alleged that Lukens' recommendation to appeal the assessment of properties that were underassessed by $1 million was unconstitutional. (R.R. at 109a-117a.) The trial court denied the motion. *Id.* The trial court explained that Taxpayer's

---

[4] District points out:

> Following the filing of [District's] Answer, [Taxpayer] failed to file the Praecipe for Determination and Supporting Brief required by the Chester County Rules of Civil Procedure. *See* C.C.R.C.P. 206.5 and 206.6 (reproduced at Appendix "A" hereto). As a result of this failure, [Taxpayer's] pre-trial Motion to Quash Appeal was never submitted to the trial court for disposition prior to trial. *See* C.C.R.C.P. 106.6 ("To have any matter submitted to the Court for a decision, a party shall file with the Prothonotary a Praecipe for Determination.").

(District's Br. at 6.)

4

arguments were not supported by the evidence and that the recommendations were not discriminatory, but were simply properties that were underassessed by more than $1 million. *Id*. Additionally, the trial court reasoned that the evidence presented did not comport with its reading of *Valley Forge Towers Apartments N, LP v. Upper Merion Area School District*, 163 A.3d 962 (Pa. 2017). (R.R. at 117a-18a.)

Following trial, on February 4, 2019, the trial court issued its decision upholding the fair market value and resulting assessment of the Property. (O.R. at Item No. 17.) The trial court found that in 2018, the fair market value of the Property was $1,850,000.00 and the assessed value was $980,500.00, while the 2019 fair market value was again $1,850,000.00 and the assessed value was $949,050.00. *Id*. On February 26, 2019, Taxpayer appealed to this Court. (O.R. at Item No. 18.) On May 23, 2019, the trial court issued an opinion in support of its decision.[5] (O.R. at Item No. 20.) Instantly, Taxpayer only challenges the denial of the motion to quash.

Citing *Valley Forge*, the trial court explained that Taxpayer's motion was based on the contention that District's scheme and practice in selecting properties for tax assessment appeals was not constitutionally uniform. (Trial court op. at 3.)

---

[5] As a side note, the trial court explained:

> For reasons completely unknown to the undersigned but not in any way, so far as we can tell, attributable to [T]axpayer, notice of the filing of this appeal did not come to the attention of the undersigned in a timely manner. Therefore, no order for the filing of a concise statement of errors complained of on appeal was [filed]. From the record, however, it would appear that only two (2) issues can possibly be raised on appeal. First, [T]axpayer might challenge our determination of value. Second, [T]axpayer may contend that the appeal should have been quashed.

(Trial court op. at 1.)

5

The trial court explained that under *Valley Forge,* 163 A.3d at 978, a taxing authority cannot implement a program appealing only assessments of a sub-classification of properties according to property type, *e.g.*, commercial, single-family residential, or industrial. (Trial court op. at 4.) The trial court recognized that District had a legitimate interest in maximizing revenue, but maintained that it was subject to scrutiny under the Uniformity Clause. *Id.* Yet, the trial court explained the two interests do not necessarily conflict and found that the evidence presented did not bring District's practices within *Valley Forge's* prohibition against appeal policies that make classifications based on property type and residency status. *Id.* The trial court reasoned that Taxpayer did not show District had an established policy and that District requested a review of all tax assessments within District and recommendations on the most underassessed properties. *Id.* The trial court recognized that all properties suggested were commercial ones but, in its view, that fact alone did not "*ipso facto*" demonstrate a violation of the Uniformity Clause. (Trial court op. at 5.) Lastly, the trial court explained that the disparity was most likely attributable to District's request to appeal only assessments that would be worth the cost of the appeal. *Id.* Taxpayer appealed to this Court on February 26, 2019.

## Discussion

On appeal,[6] Taxpayer raises three issues: (1) whether District violated public policy and applicable law by failing to enact any policy for the selection of

---

[6] "This Court's review in a tax assessment appeal is limited to determining whether the trial court abused its discretion, committed an error of law or reached a decision not supported by substantial evidence." *Maula v. Northampton County Division of Assessment*, 149 A.3d 442, 444 (Pa. Cmwlth. 2016) (quoting *Sher v. Berks County Board of Assessment Appeals*, 940 A.2d 629, **(Footnote continued on next page…)**

6

assessment appeals; (2) whether District violated the requirements of the Uniformity Clause by adopting a monetary threshold for determining whether to file an assessment appeal which exclusively targeted properties with an actual market value of more than $1 million; and (3) whether District violated the requirements of the Uniformity Clause by implementing an assessment appeal selection scheme that systematically subjected commercial properties to disparate treatment.[7]

## Uniformity Challenge

We first address the contention that District's selection process violated the Uniformity Clause of the Pennsylvania Constitution, Pa. Const. art. VIII, §1. Taxpayer maintains that District violated the Uniformity Clause in two ways: (1) by appealing the assessments of only commercial properties, and (2) setting a monetary threshold targeting properties underassessed by $1 million.

Taxpayer first argues that *Valley Forge* stands for the proposition that taxing authorities cannot treat different property sub-classifications in a disparate manner. Taxpayer notes that in *Valley Forge*, the school district appealed only commercial properties and our Supreme Court found that practice to be unconstitutional. Taxpayer maintains that the Uniformity Clause can be violated in

---

**(continued…)**

632 n.4 (Pa. Cmwlth. 2008)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Norwegian Township v. Schuylkill County Board of Assessment Appeals*, 74 A.3d 1124, 1128 n.3 (Pa. Cmwlth. 2013) (citation omitted). Our review of legal issues is plenary. *Valley Forge*, 163 A.3d at 969.

[7] Taxpayer also argues that the trial court allegedly erred in applying a rational basis standard. This argument is subsumed in our discussion of the Uniformity Clause and its application to the facts of this case.

7

practice and without a formal policy in place. It also argues that under *Valley Forge,* all real estate constitutes a single class entitled to uniform treatment and similarly situated taxpayers should not be treated differently by taxing authorities. It explains that all property within a taxing district is a single class and cannot be subject to different, intentional, or systematic sub-classification. Specifically, Taxpayer points to the language in *Valley Forge* that "it follows that a taxing authority is not permitted to implement a program of only appealing the assessments of one sub-classification of properties, where that sub-classification is drawn according to property type—that is, its use as commercial, apartment complex, single-family residential, industrial, or the like." 163 A.3d at 978. Based on the foregoing, Taxpayer argues that the appeals of commercial properties in the present case are unconstitutional.

Taxpayer maintains that the monetary value of property can never be made a basis for the imposition of an unequal burden and, thus, such classifications violate the Uniformity Clause. Taxpayer argues that property value is an illegal basis upon which to base an assessment, and, thus, uniform valuation of properties within the same class and territorial limits must produce as nearly as may be a uniform result. Taxpayer maintains that the property value classification here is unconstitutional.

Conversely, District maintains that its action in appealing the assessments did not violate the Uniformity Clause. District argues that a cost/benefit analysis does not run afoul of the Uniformity Clause, because there is no restriction on the methodology in determining whether to appeal a particular assessment. Further, District asserts that a methodology that narrows the class of properties evaluated for appeal based on economic thresholds does not violate the Uniformity

8

Clause. Thus, District maintains that its use of a similar methodology based upon a cost/benefit analysis is also constitutional.

## I. The Uniformity Clause Generally

Historically speaking, unfair taxation is at the very heart of what sparked this great nation—for our forefathers decried as tyranny the practice of unfair taxation. The Uniformity Clause reflects this principle. The Uniformity Clause provides in full: "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, §1.[8] The Uniformity Clause ensures that "a taxpayer should pay no more or no less than [the taxpayer's] proportionate share of the cost of government." *In re Sullivan*, 37 A.3d 1250, 1254-55 (Pa. Cmwlth. 2012)

---

[8] It has been said that

> [w]hile every tax is a burden, it is more cheerfully borne when the citizen feels that he is only required to bear his proportionate share of that burden measured by the value of his property to that of his neighbor. This is not an idle thought in the mind of the taxpayer, nor is it a mere speculative theory advocated by learned writers on the subject; but it is a fundamental principle written into the Constitutions and statutes of almost every state in this country.

*School District of Philadelphia v. Board of Revision of Taxes*, 217 A.3d 472 (Pa. Cmwlth. 2019) (citing *Delaware, L. & W. Railway Company's Tax Assessment* 73 A. 429, 430 (Pa. 1909)). Similarly, we recognize "the general principle that taxpayers should pay no more or less than their proportionate share of government." *Valley Forge*, 163 A.3d at 972 (quoting *Downingtown Area School District v. Chester County Board of Assessment Appeals*, 913 A.2d 194, 199 (Pa. 2006)).

(quoting *Deitch Co. v. Board of Property Assessment, Appeals & Review of Allegheny County*, 209 A.2d 397, 401 (Pa. 1965)).[9]

Our Supreme Court's decision in *Valley Forge* controls the disposition of the instant matter. In *Valley Forge*, this Court considered whether a taxing authority, under the Uniformity Clause, could selectively appeal only the assessments of commercial properties, while refraining from appealing the assessments of other property types. 163 A.3d at 966. There, the school district decided to appeal the assessments of some properties within its boundaries, including the apartment complex at issue. *Id.* It retained a third-party firm to advise it on which properties to appeal. *Id.* The third-party firm concentrated solely on commercial properties including apartment complexes. *Id.* The focus on commercial properties resulted in greater tax revenue increases than doing the same to underassessed single-family homes. *Id.*

While the tax appeals were pending, the appellant filed a complaint seeking declaratory and injunctive relief alleging the school district violated the Uniformity Clause by only appealing the assessment of commercial properties. *Id.* at 967. The school district filed preliminary objections, which were sustained by the common pleas court. *Id.* This Court affirmed the common pleas court. *Id.* at 968; *see Valley Forge Towers Apartments N, LP v. Upper Merion School District*, 124 A.3d 363 (Pa. Cmwlth. 2015), *rev'd*, 163 A.3d 962 (Pa. 2017). Our Supreme Court reversed and held that the school district's appeal policy violated the Uniformity Clause.

---

[9] "Some practical rough uniformity with a limited amount of variation is permitted." *Clifton v. Allegheny County*, 969 A.2d 1197, 1211 (Pa. 2009) (citing *Beattie v. Allegheny County*, 907 A.2d 519, 530 (Pa. 2006)).

10

The Court explained that it is an "established feature of Pennsylvania uniformity jurisprudence that 'all real estate is a constitutionally designated class entitled to uniform treatment and the ratio of assessed value to market value adopted by the taxing authority must be applied equally and uniformly to all real estate within the taxing authority's jurisdiction.'" *Valley Forge*, 163 A.3d at 973 (quoting *Westinghouse Electric Corporation v. Allegheny County Board of Property Assessment, Appeals & Review*, 652 A.2d 1306, 1314 (Pa. 1995)). Importantly, the Court clarified its holding in *Downingtown* and explained that

> the Uniformity Clause entails a "prevailing requirement that similarly situated taxpayers should not be *deliberately* treated differently by taxing authorities." *Downingtown*, [], 913 A.2d at 201 (emphasis [in original]). In this respect, *Downingtown* explained that, "[i]n this context, the term 'deliberate' *does not exclusively connote* wrongful conduct, but also includes any intentional or systematic method of enforcement of the tax laws." *Id.* at 201 n.10 (emphasis [in original]).
>
> * * *
>
> [W]e find it useful to summarize two principles articulated in *Downingtown* and *Clifton* which are presently relevant. First, all property in a taxing district is a single class, and, as a consequence, the Uniformity Clause does not permit the government, including taxing authorities, to treat different property sub-classifications in a disparate manner. *See Clifton*, [] 969 A.2d at 1212; *accord Westinghouse [Electric Corporation]*, [] 652 A.2d at 1314. Second, this prohibition applies to any intentional or systematic enforcement of the tax laws, and is not limited solely to wrongful conduct. *See Downingtown*, [] 913 A.2d at 201 n.10 (citing *Beattie*, [] 907 A.2d at 523).

*Valley Forge*, 163 A.3d at 975.

In sum, the Court articulated the following relevant principles: (1) under the Uniformity Clause, all property within a taxing district is a single class and, as

such, may not be treated in a disparate manner; (2) similarly situated taxpayers should not be deliberately treated differently by taxing authorities; and (3) deliberate does not exclusively connote wrongful conduct, but includes any intentional or systematic method of enforcement of the tax laws.[10] The Court further explained that:

> From the two *Downingtown/Clifton* precepts we have discussed—that all real estate in a taxing district forms a single collective class to be treated uniformly, and that systematic disparate enforcement of the tax laws based on property sub-classification, even absent wrongful conduct, is constitutionally precluded—*it follows that a taxing authority is not permitted to implement a program of only appealing the assessments of one sub-classification of properties, where that sub-classification is drawn according to property type—that is, its use as commercial, apartment complex, single-family residential, industrial, or the like*. We do not overlook that Section 8855 gives the [s]chool [d]istrict a statutory right to appeal assessments; our point is that this alone cannot justify an action which the Uniformity Clause prohibits.[] The restrictions imposed by that aspect of our organic law limit the manner in which otherwise legitimate statutory powers may be utilized in practice. *See Downingtown*, . . . 913 A.2d at 204 (confirming that demands of uniformity take precedence over statutory requirements (quoting [*In re Brooks Building*, 137 A.2d 273, 276 (Pa. 1958)]); *see also Alco Parking Corp. v. City of Pittsburgh*, . . . 307 A.2d 851, 856 ([Pa.] 1973) (reciting that the Commonwealth and its political subdivisions are subject to uniformity requirements when they exercise their taxing powers), *rev'd on other grounds*, 417 U.S. 369, . . . (1974); [*Delaware*], . . . 73 A. at 430 (noting that tax uniformity principles, which

---

[10] Taxpayer also argues that the trial court erred in requiring it to prove discriminatory conduct under an allegedly incorrect higher standard than the law requires. This issue has been subsumed in our discussion of *Valley Forge*.

12

require substantial tax equality, apply to the Legislature, the courts, and taxing authorities).

*Valley Forge*, 163 A.3d at 978. (emphasis added). In other words, the Court articulated the balance struck between a school district's rights under Section 8855 and the Uniformity Clause. Finally, the Court observed that

> the limitations on disparate treatment imposed by the Uniformity Clause are not merely formal or abstract in nature. Although using public funds wisely and obtaining needed revenues are important objectives, salutary governance also requires attention to other substantive aims. The government must be concerned with ensuring a rough equalization of tax burdens under a structure in which taxes are imposed, adjusted, and collected equitably. Thus, as "every tax is a burden," *[Delaware]*, . . . 73 A. at 430, it is important that the public has confidence that property taxes are administered in a just and impartial manner, with each taxpayer contributing his or her fair share of the cost of government. This lends legitimacy to the property[]tax system in the eyes of the public which, in turn, tends to suppress both the desire to evade taxes and the tendency to embark upon protracted litigation—which, itself, consumes large quantities of societal resources. Where there is a conflict between maximizing revenue and ensuring that the taxing system is implemented in a non-discriminatory way, the Uniformity Clause requires that the latter goal be given primacy. *Cf. Clifton*, . . . 969 A.2d at 1228 (indicating that rough uniformity in property assessment may not be submerged to the "legitimate governmental interest in creating and preserving a stable and predictable local real estate tax assessment system"). Notably, however, the two objectives do not necessarily conflict.

*Valley Forge*, 163 A.3d at 979-80. With these general principles in mind, we turn to Taxpayer's first argument that District violated the Uniformity Clause by appealing the assessments of *only* commercial properties.

13

**II. The Validity of Property Type Classifications under the Uniformity Clause**

As stated, Taxpayers raise the question of whether the alleged property type classification and the monetary classification are permissible under the Uniformity Clause. We review the alleged property sub-classification first.

We conclude that District's appeal practices did not violate the Uniformity Clause. Under *Valley Forge*, District's actions were constitutionally firm. The record reflects that District *intentionally disregarded* the type of property and, thus, it cannot be said that District's actions in appealing the assessments of commercial properties were intentional. Where, as here, a taxing authority intentionally disregards the type of property when deciding what property assessments to appeal, its conduct is inherently not deliberate. Moreover, District's actions did not systematically target commercial properties, but, rather, only focused on properties that would be worth the cost and expense of an appeal. *Valley Forge* makes it abundantly clear that there is a balance to be struck between a school district's ability to appeal an assessment and the Uniformity Clause. Thus, a school district's policy that attempts to be fiscally responsible by only appealing assessments that would generate enough revenue to justify the cost of the appeal does not violate the Uniformity Clause.

Recently, in *Punxsutawney Area School District v. Broadwing Timber, LLC* (Pa. Cmwlth., No. 1209 C.D. 2018, filed October 29, 2019) (unreported), *petition for allowance of appeal pending* (Pa., No. 427 WAL 2019, filed November

14

29, 2019), we encountered a similar scenario.[11]  There, the taxpayer, Broadwing Timber, LLC (Broadwing), owned around 2,600 acres of land.  Slip op. at 2.  The school district filed an assessment appeal asserting that the property was underassessed.  *Id*.  The local board of assessment appeals did not change the assessment.  *Id*.  The school district appealed and a bench trial was held.  *Id*. at 2-3.  At the bench trial, the school district's business administrator testified as to the methods used to determine whether to appeal a property's assessment.  *Id*. at 3.

The method was described as follows. The business administrator received monthly checks for the school district's portion of realty transfer taxes paid.  *Id*.  Most transfers of property within the school district resulted in tax revenue of less than $1,000.00; accordingly, the business administrator noticed transfers above that amount.  *Id*. at 3-4.  Using this process, the business administrator noticed a transfer tax payment of around $25,000.00.  *Id*. at 4.  *Without considering the type of property involved,* the business administrator calculated the potential increase in revenue that could be realized from the reassessment of the property.  *Id*.  After review by the superintendent and solicitor, the school district determined that the monetary benefit of the tax increase outweighed the likely costs of the tax assessment appeal.  *Id*.

The discovery of the initial underassessment prompted the business administrator to search for others.  *Id*.  The assessment of a local Walmart was appealed using the same method described above.  *Id*. at 4-5.  The business administrator explained that other properties came to her attention in a similar way, and she continued to disregard the nature of the property's ownership or zoning.  *Id*.

---

[11] *Punxsutawney* is an unreported opinion.  Under section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code §69.414(a).

15

at 5. Furthermore, the business administrator stated that she did not use a specific monetary threshold, but looked at the amount of the transfer tax to determine whether to file an assessment appeal. *Id*. at 6. She explained the decision to file an appeal was "strictly based on possibility of revenue versus the expense of appealing it" and that it was a "purely financial decision." *Id*.

An appeal was then taken on Broadwing's property. The business administrator explained that she had become aware of Broadwing's property in a similar manner. *Id*. at 5. "Using the same method as before, and without inquiring into the [p]roperty's zoning, ownership, or type, [the] business administrator calculated the estimated sale price" and concluded that the increase in revenue outweighed the cost of an appeal. *Id*. The business administrator testified that, although a residential property had not yet had its assessment appealed under her method, the school district would not refrain from appealing a residential assessment so long as it was financially viable. *Id*. at 6-7. The Court of Common Pleas of Jefferson County found that, based on *Valley Forge*, the method described by the business administrator did not violate the Uniformity Clause. *Id*. at 8. Broadwing appealed the decision to this Court.

We considered the question of whether the school district's practice which resulted in the appeals of only commercial or commercially used properties violated the Uniformity Clause. We concluded

> that the [d]istrict's practice **thus far** has resulted in appeals of commercial or commercially[]used properties is not determinative where that practice is implemented or carried out without regard to the type or ownership of a property. The [d]istrict relies on the occurrence of a triggering event to bring a potentially underassessed property to its attention. So far, no sale of residential properties has resulted in a high enough realty transfer tax to warrant

16

review, and Broadwing has not presented evidence to the contrary. That is not to say that none will in the future, and, based on [b]usiness [a]dministrator's credited testimony, if one does, the same process will be used to determine whether that property's assessment should be appealed. Such result is consistent with *East Stroudsburg [Area School District v. Meadow Lake Plaza, LLC* (Pa. Cmwlth. No. 371 C.D. 2018, filed October 17, 2019), *petition for allowance of appeal pending* (Pa., No. 723 MAL 2019, filed November 15, 2019)]*, wherein we rejected the taxpayers argument that, even if the threshold was facially neutral, it resulted in the appeal only of commercial properties based on the credited evidence presented by the school district that it would have appealed any residential property's assessment had any met the threshold.

*Punxsutawney*, slip op. at 21-22 (citation omitted).

Our conclusion in *Punxsutawney* is persuasive and applicable here, because the actions of District are similar to those of the school district in *Punxsutawney*. First, just as the school district in *Punxsutawney* did not base its decision to appeal the assessment based on the type of the property, neither did District. Specifically, District directed its consultant as follows, "[p]lease do not limit your review to any particular class of properties in the [s]chool [d]istrict, but review all classes of properties including commercial, residential, and otherwise." (R.R. at 92a.) In the same likeness, both District and the school district in *Punxsutawney* disregarded the nature of the property. As we explained above, this is in accord with our Supreme Court's holding in *Valley Forge*, because District's disregard of property type cannot logically equate to unlawful treatment based upon property type.

Moreover, the facially neutral action employed by District is not sufficient to result in a violation of the Uniformity Clause. As in *Punxsutawney*, there is no indication District would not have appealed the assessment of residential properties in the event that such properties would have fallen within its fiscal

17

parameters. District is concerned with maximizing its revenue, as was the school district in *Punxsutawney*. The mere fact that all appealed properties were commercial does not *per se* create a violation of the Uniformity Clause. This is especially so in light of District's intentional disregard for the nature of the property. Therefore, this Court concludes there is no violation of the Uniformity Clause with respect to a property type classification.

## III. The Validity of Monetary Thresholds under the Uniformity Clause

Whether monetary thresholds violate the Uniformity Clause requires a separate analysis. Our Supreme Court in *Valley Forge* specifically left open the question of whether monetary thresholds violated the Uniformity Clause. 163 A.3d at 979.[12] Previously, this Court has concluded that they do not.

In *In re Springfield School District*, 101 A.3d 835 (Pa. Cmwlth. 2014), VMDT Partnership (VMDT) similarly argued that the school district violated the Uniformity Clause in selecting a sub-classification of properties for assessment appeals. The school district appealed the assessments of two VMDT properties. *Id*. at 839. In order to select which properties to appeal, the school district reviewed

---

[12] The Supreme Court stated verbatim:

> We pause at this juncture to clarify that nothing in this opinion should be construed as suggesting that the use of a monetary threshold—such as the one challenged in *Springfield*—or some other selection criteria would violate uniformity if it were implemented without regard to the type of property in question or the residency status of its owner.[] Such methodologies are not presently before the Court.

*Valley Forge*, 163 A.3d at 979 (footnote omitted).

interim assessment reports and monthly real estate transfer reports, comparing sale prices to implied market values. *Id*. at 840. The school district selected sale prices which were $500,000.00 or greater than the market value for possible appeals because this justified the costs of the assessment appeals. *Id*. VMDT argued that this policy violated the Uniformity Clause. *Id*. at 847.

We concluded that the school district's use of the $500,000.00 threshold was based upon the reasonable financial and economic considerations of increasing its revenue, balanced against the costs of filing assessment appeals. *Id*. at 849. Moreover, this Court concluded that, although the monetary threshold would mostly subject commercial properties to assessment appeals, this fact did not warrant a different conclusion. *Id*.

In *Valley Forge*, our Supreme Court addressed this Court's decision in *Springfield*.[13] Nevertheless, our Supreme Court declined to decide the issue of

---

[13] With regard to this Court's decision in *Springfield*, our Supreme Court stated:

> *Springfield* made this interpretation of *Downingtown* explicit, stating that "[t]he Uniformity Clause 'does not require equalization across all sub-classifications of real property.' " *Springfield*, 101 A.3d at 849 (quoting *Downingtown*, . . . 913 A.2d at 201 n.9). In fact, however, the *Downingtown* footnote quoted in *Springfield* had only characterized the federal Equal Protection Clause [U.S. Const. amend. XIV] in such terms. It never indicated that the Uniformity Clause permits the government to sub-classify properties since, as even *Springfield* acknowledged, "[u]nder the Uniformity Clause, all real estate must be treated as a single class entitled to uniform treatment." *Id.* at 847 (citing *Clifton*, . . . 969 A.2d at 1212).

> * * *

> Relatedly, the *Springfield* court also addressed the standard for determining the permissibility of a government program which, in its operation, treats different property sub-classifications in a

**(Footnote continued on next page…)**

19

whether monetary classifications would run afoul of the Uniformity Clause. However, this Court recently answered that question in *East Stroudsburg.*

In *East Stroudsburg*, the taxpayers owned property within the East Stroudsburg School District. *Id.* at 2. In 2016, the school district began filing assessment appeals in an attempt to increase revenue. *Id.* at 3. The school district wanted to assure that it was targeting properties for which the assessment appeals would generate sufficient revenue to justify the costs of appeals. *Id.* Thus, the school district decided that it would target "any and all properties" that would generate at least $10,000.00 in additional revenue. *Id.* at 4. Significantly, we noted that the school district would have filed assessment appeals relating to residential properties had any residential properties met the threshold. *Id.* at 4.

---

**(continued…)**

> disparate manner. It acknowledged *Downingtown*'s explanation that the Uniformity Clause entails a "prevailing requirement that similarly situated taxpayers should not be *deliberately* treated differently by taxing authorities." *Downingtown*, . . . 913 A.2d at 201 (emphasis added). In this respect, *Downingtown* explained that, "[i]n this context, the term 'deliberate' *does not exclusively connote* wrongful conduct, but also includes any intentional or systematic method of enforcement of the tax laws." *Id.* at [] 201 n.10 (emphasis added). Inexplicably, *Springfield* referenced this portion of *Downingtown* as indicating that "[t]he term 'deliberate' in this context *connotes* 'wrongful conduct,' " *Springfield*, 101 A.3d at 847 (emphasis added)—the opposite of what *Downingtown* had actually said.

*Valley Forge*, 163 A.3d at 974–75 (emphasis in original). However, our Supreme Court did not disagree with *Springfield*'s approval of the use of a monetary threshold to decide which properties' assessments to appeal. *Id.* at 975 n.13.

The taxpayers challenged the selection process as unconstitutional in violation of the Uniformity Clause, alleging that the school district only filed assessment appeals of commercial properties. *Id*. at 6. We concluded that "nothing in our Supreme Court's analysis in *Valley Forge* [] precludes application of a reasonable monetary threshold for assessment appeals, based on an estimate of the minimum potential revenue gain that will make a tax assessment appeal cost-effective." *Id*. at 11. We also rejected the taxpayer's argument that, even though the policy was facially neutral, it ran afoul of the Uniformity Clause because only commercial properties had their assessments appealed. *Id*. This Court pointed out that the court of common pleas credited the testimony that the school district searched "for any and all properties" meeting the $10,000.00 threshold, and would have filed an assessment appeal of a residential property so long as it came within the threshold. *Id*. at 12. Moreover, we concluded that the "$10,000[.00] threshold [was] reasonable and [did] not violate the uniformity requirement of the Pennsylvania Constitution, despite the fact that in this particular instance, only commercial properties in the [s]chool [d]istrict met that threshold." *Id*. at 13.

Thus, our decision in *East Stroudsburg* authorized the use of such thresholds. Our holding in *East Stroudsburg* plainly determined that, even though a monetary threshold resulted in only commercial properties having their assessments appealed, such practice did not violate the Uniformity Clause.

As we concluded in *Springfield* and *East Stroudsburg*, monetary thresholds do not violate the Uniformity Clause. Here, District was using a monetary threshold only for the purpose of making prudent fiscal decisions, and *not* for the purpose of discriminating against sub-classes of properties. Because District

21

deliberately ignored the property type and focused only on its fiscal considerations, District did not violate the Uniformity Clause.

## IV. The Validity of District's Alleged Assessment Appeal Policy under the Uniformity Clause

Taxpayer also argues that District violated the Pennsylvania Sunshine Act[14] and the Public School Code of 1949[15] by failing to generally enact or adopt an appeal policy in compliance with either statute's provisions. District argues that because this issue was not raised below it is waived.[16] We agree.

It is axiomatic that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pennsylvania Rule of Appellate Procedure 302, Pa.R.A.P. 302. *See, e.g.*, *Philadelphia Correctional Officers Association v. Pennsylvania Labor Relations Board*, 667 A.2d 459, 463 (Pa. Cmwlth. 1995) (declining to hear appellant's constitutional issues that were not raised before the Pennsylvania Labor Relations Board or the lower court). Furthermore,

> [i]t is well established that "[i]n order to preserve an issue for appeal, a litigant must make a timely, specific objection at trial *and* must raise the issue on post-trial motions." *Dennis v. Southeastern Pennsylvania Transportation Authority,* 833 A.2d 348, 352 (Pa. Cmwlth. 2003) (emphasis added). Issues not preserved for appellate review cannot be considered by this Court,

---

[14] 65 Pa.C.S. §§701-716.

[15] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 - 27-2702.

[16] Taxpayer did not respond to District's assertion of waiver in its reply brief.

even if the alleged error involves "a basic or fundamental error." *Id.*[17]

*Municipal Authority of Borough of Midland v. Ohioville Borough Municipal Authority*, 108 A.3d 132, 136-37 (Pa. Cmwlth. 2015) (emphasis in original.)[18]

Here, the record is devoid of any instance where Taxpayer raised issues under the Sunshine Act or the Public School Code of 1949 before the trial court, and, thus, those issues have been waived and cannot be considered.

## Conclusion

For the foregoing reasons, this Court concludes that District's action in appealing the assessment of Taxpayer's property did not violate the Uniformity Clause.

---

[17] *See Dilliplaine v. Lehigh Valley Trust Company*, 322 A.2d 114, 117 (Pa. 1974).

[18] Nevertheless, if we were to consider these issues we would find Taxpayer's arguments unavailing. In *Punxsutawney*, we stated,

> We begin with [taxpayer's] arguments that due to the lack of a formalized or written policy and/or specific criteria or a set monetary threshold, the [school d]istrict's practice is arbitrary. **We do not read *Valley Forge* as requiring a formal or written policy or criteria.** All *Valley Forge* requires is that the "other selection criteria" used by a taxing authority, whether a monetary threshold or other methodology, be "implemented without regard to the type of property in question or the residency status of its owner." 163 A.3d at 979. Thus, the lack of such formal or written policy does not warrant reversal.

*Punxsutawney*, slip op. at 18 (emphasis added). We find our disposition in *Punxsutawney* on this same issue persuasive, and thus, would follow it. Furthermore, because we have held that District did not violate the Uniformity Clause by appealing the assessments of only the identified properties, the burden did not shift to District to prove that its policy or actions were not discriminatory, therefore, whether District had a policy is of no moment.

Accordingly, the order of the trial court is affirmed.


_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kennett Consolidated School District :
                                    :    No. 253 C.D. 2019
               v.                 :
                                      :
Chester County Board of Assessment :
Appeals, Chester County, PA       :
                                      :
Appeal of:                            :
Property Owner Autozone         :
Development Corp.             :

## ***ORDER***

AND NOW, this 28th day of February, 2020, the February 4, 2019, order of the Court of Common Pleas of Chester County is affirmed.


                                    _____
                                    PATRICIA A. McCULLOUGH, Judge